[Cite as *RL Clark, L.L.C. v. Hammond*, 2024-Ohio-5051.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## BELMONT COUNTY

RL CLARK, LLC,

Plaintiff-Appellee,

v.

GLADYS HAMMOND ET AL.,

Defendants-Appellants.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 23 BE 0047**

---

Civil Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 21 CIV 0038

**BEFORE:**
Cheryl L. Waite, Carol Ann Robb, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Timothy B. Pettorini*, *Atty. Jeremy D. Martin* and *Atty. Sara E. Fanning*, Roetzel & Andress, LPA, for Plaintiff-Appellee

*Atty. Erik A. Schramm, Jr.* and *Atty. Kyle W. Bickford*, Hanlon, McCormick, Schramm, Bickford & Schramm Co., LPA, for Defendants-Appellants

Dated:  October 18, 2024

---

**WAITE, J.**

**{¶1}** Appellants challenge the trial court's summary judgment decision regarding the effect of the Marketable Title Act ("MTA") on a one-half royalty interest contained in a 1902 deed. The trial court determined that a 1956 deed was the root of title in this matter. The court examined whether a reference in that deed to prior royalty interests was general rather than specific, and whether the royalty interest was extinguished under the MTA. Appellants contend that the reference to oil and gas reserved by prior grantors was specific enough to satisfy the three-part test in *Blackstone v. Moore*, 2018-Ohio-4959. Appellants are incorrect, and the trial court properly concluded that the reference to prior oil and gas royalties in the 1956 deed was merely general. Based on the holding in *Blackstone*, the general reference to a royalty interest does not preserve the interest unless the deed also contained specific identification of a prior recorded title transaction. There is no such specific identification in the 1956 deed. The 1902 royalty interest was extinguished under the MTA.

**{¶2}** Appellants also argue that there are numerous leases in the record, and that those leases can act as savings events to prevent extinguishment under the MTA. Although it is true that a lease can act as a savings event under the MTA, Appellants did not show that the 1902 royalty interest arose in any of the leases that are part of the record in this case. Appellants' assignment of error is overruled, and the judgment of the trial court is affirmed.

Facts and Procedural History

**{¶3}** The dispute in this case is whether Appellants own a one-half oil and gas royalty underlying eight acres of land in Section 2 of Smith Township, Belmont County, Ohio. Appellee owns a portion of the oil and gas rights, but contends that it owns those rights free and clear of the Appellants' alleged interest due to the effect of the automatic extinguishment provisions of the MTA. Appellants rely on a 1902 deed to establish their interest, whereas Appellee relies on a 1956 deed.

**{¶4}** The eight acres in question were originally part of a larger parcel of property, roughly 21 acres in size (also described as 21 acres and 103 square perches or "the 21-acre tract"). In 1902, the owners, Issac C. Wise and Hannah Wise, conveyed the property to George Green with the following exception: "excepting the one half (1/2) of the oil and gas royalty." (Belmont County Deed Records Vol. 142, Page 127, "The Wise Deed"). Appellants purport to be the successors in interest to this exception of one half of the oil and gas royalty. This royalty interest will be referred to as the "[t]he Wise 1/2 Royalty."

**{¶5}** In 1908, Aaron C. Ramsey acquired the property. The deed contained an exception of one half the oil and gas royalties. In 1925, Mr. Ramsey deeded the property to D.R. Dunfee and Sara B. Dunfee (Belmont County Deed Records Vol. 258, Page 466, "The Ramsey Deed"). This deed also excepted one half of the oil and gas royalties.

**{¶6}** On November 13, 1956, the Dunfees conveyed the property to Joe Sheba, Jr. and Hazel Sheba with the following provision: "subject also to such interest in the oil and gas royalties as have hereto been reserved by former grantors." (Belmont County Deed Records Vol. 428, Page 488, "The Dunfee Deed").

**{¶7}** On March 3, 1972, Joe Sheba, Jr. and Hazel Sheba conveyed the property to Clyde and Marcelene Porter "excepting also all oil and gas reserved by former grantors." (The "Sheba Deed").

**{¶8}** On January 12, 1974, the Porters conveyed the property to James M. Harkins and Jacqueline Harkins "excepting . . . all oil and gas reserved by the Grantors' predecessors in title." (The "Porter Deed").

**{¶9}** On July 13, 1995, the Harkins deeded the property to Lisa Marie Clark. The deed contained the same language as the 1974 Porter Deed: "excepting . . . all oil and gas reserved by the Grantors' predecessors in title."

**{¶10}** In 1997, Lisa M. Clark conveyed a life estate in the property to Jacqueline J. Harkins, and a remainder interest to Lisa Marie Clark, Karen D. Price, and Patricia A. Wonski. In 1999, the remaindermen conveyed their interest to Roger W. Clark and Lisa Clark.

**{¶11}** In 2015, the Clarks sold an undivided 65.91% interest in the oil and gas to Ridgeway Royalties, LLC. Then, in 2017, the Clarks conveyed their 34.09% oil and gas rights to Appellee RL Clark, LLC ("RL Clark").

**{¶12}** On March 11, 2021, Appellee filed a complaint in the Belmont County Court of Common Pleas against 107 defendants, including the 10 Appellants in this appeal. The defendants are referred to as "[t]he Wise Defendants" as their rights purportedly arise from the 1902 Wise Deed and the Wise 1/2 Royalty. RL Clark raised claims of declaratory judgment and quiet title based on the MTA, R.C. 5301.47 et seq. Appellants filed a counterclaim seeking declaratory judgment and quiet title based on the same principles.

{¶13} On July 28, 2023, Appellee filed a motion for summary judgment, and Appellants filed a response in opposition. On September 8, 2023, the trial court granted Appellee's motion for summary judgment. The trial court then adopted Appellee's proposed judgment entry. The court determined that: one who has an unbroken chain of title of record of an interest in land for forty years or more has marketable record title under the MTA; the root of title deed was the 1956 Dunfee Deed; the Dunfee Deed does not contain a specific reference to the "Wise 1/2 Royalty" claimed by Appellants; there are no title transactions affecting title to the "Wise 1/2 Royalty" filed within 40 years of the root of title deed; the "Wise 1/2 Royalty" was not the subject of any of the oil leases Appellants put in evidence; the "Wise 1/2 Royalty" was extinguished by the MTA; and that Appellee RL Clark was the owner of an undivided 34.09% interest in the oil and gas in the property.

{¶14} The court's summary judgment entry was filed on October 5, 2023. The notice of appeal was filed on November 2, 2023. Appellants raise a single assignment of error containing three sub-parts.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN GRANTING PLAINTIFF-APPELLEE'S MOTION FOR SUMMARY JUDGMENT.

{¶15} Appellants' single assignment of error asserts the following:

1. The Trial Court erred in determining the oil and gas royalty interest created by the Wise Deed was extinguished by operation of the Ohio Marketable Title Act by

ignoring numerous title transactions of the oil and gas estate which encompassed the royalty interest.

2. The Trial Court erred in finding the root of title deed, being the Dunfee Deed, and subsequent conveyances, contain only a general reference.

3. The Trial Court erred by holding the Dunfee Deed was a proper root of title.

{¶16} The questions raised by Appellants will be addressed as follows: 1) whether the prior property interest in the 1956 Dunfee Deed is a general reference without a specific identification of a prior recorded title transaction; 2) whether the trial court should have relied on the 1974 Porter Deed as the root of title; and 3) whether the oil and gas leases on the property were "savings events" under the MTA preventing extinguishment of the 1902 Wise 1/2 Royalty.

## Summary Judgment Standard

{¶17} The trial court entered summary judgment in this matter. An appellate court conducts a de novo review of a trial court's decision to grant summary judgment, using the same standards as the trial court set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Before summary judgment can be granted, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). Whether a fact is "material" depends on the substantive

law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603 (8th Dist. 1995).

**{¶18}** "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis deleted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 296 (1996). If the moving party carries its burden, the nonmoving party has a reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. *Id.* at 293. In other words, when presented with a properly supported motion for summary judgment, the nonmoving party must produce some evidence to suggest that a reasonable factfinder could rule in that party's favor. *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 386 (8th Dist. 1997).

**{¶19}** The evidentiary materials to support a motion for summary judgment are listed in Civ.R. 56(C) and include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact that have been filed in the case. In resolving the motion, the court views the evidence in a light most favorable to the nonmoving party. *Temple*, 50 Ohio St.2d at 327.

<u>Extinguishment of prior mineral interest under the MTA</u>

**{¶20}** This case involves the oft-litigated effect of Ohio's MTA to extinguish prior mineral rights due to the passage of time. The MTA was enacted in 1961 "to extinguish interests and claims in land that existed prior to the root of title, with 'the legislative purpose of simplifying and facilitating land title transactions by allowing persons to rely on a record chain of title.' " *Corban v. Chesapeake Exploration*, L.L.C., 2016-Ohio-5796

¶ 17, quoting R.C. 5301.55; *see also Cattrell Family Woodlands, LLC v. Baruffi*, 2021-Ohio-4660, ¶ 12 (7th Dist.). In theory, the process of establishing a reliable chain of title is simplified by requiring proof of record title going back only 40 years, rather than requiring proof through the entire chain of title that may span two hundred years or more. Under the MTA, a person who has an unbroken chain of record title to any interest in land for at least 40 years has a "marketable record title" to the claimed interest. R.C. 5301.48. A marketable record title "operates to extinguish" stale interests and claims that existed prior to the effective date of the root of title. R.C. 5301.47(A); *Erickson v. Morrison*, 2021-Ohio-746, ¶ 16. Prior interests beyond the 40-year period established by the MTA are "null and void." R.C. 5301.50. An interest that has been extinguished by the 40-year limitations period cannot be revived. R.C. 5301.49(D).

{¶21} There are three major methods for preserving a prior interest in the marketable chain of title pursuant to the MTA: (1) the preexisting interest is specifically identified in the muniments that form the record chain of title; (2) the holder of the preexisting interest has recorded a notice claiming the interest, in accordance with R.C. 5301.51; or (3) the preexisting interest arose out of a title transaction that was recorded subsequent to the effective date of the root of title. *West v. Bode*, 2020-Ohio-5473, ¶ 16.

{¶22} A critical term in any MTA analysis is "root of title." This is defined in R.C. 5301.47(E): " 'Root of title' means that conveyance or other title transaction in the chain of title of a person, purporting to create the interest claimed by such person, upon which he relies as a basis for the marketability of his title, and which was the most recent to be recorded as of a date forty years prior to the time when marketability is being determined." For example, a fee simple transfer deed creates an interest in the grantee of the entire

fee simple property rights, absent express exceptions and reservations, and can act as the root of title for a person claiming a fee simple interest. *Pernick v. Dallas*, 2021-Ohio-4635, ¶ 45 (7th Dist.).

**{¶23}** R.C. 5301.49 sets out exceptions that "serve as a shield" to protect certain property interests from the extinguishing effect of the MTA. *Spring Lakes, Ltd. v. O.F.M. Co.*, 12 Ohio St.3d 333, 335 (1984). These exceptions are referred to as "saving events." *Corban* at ¶ 18. R.C. 5301.49(A) provides, in pertinent part:

> Such record marketable title shall be subject to:
>
> (A) All interests and defects which are inherent in the muniments of which such chain of record title is formed; provided that a general reference in such muniments, or any of them, to easements, use restrictions, or other interests created prior to the root of title shall not be sufficient to preserve them, unless specific identification be made therein of a recorded title transaction which creates such easement, use restriction, or other interest
>
> . . . .

**{¶24}** Often, as is true in this case, a deed contains a reference to a prior interest that, at first glance, is not altogether clear. We have been asked many times to determine whether a vague, unclear, or general reference to a prior property interest is extinguished under the MTA, or preserved by the savings event provision of R.C. 5301.49(A). "Balanced against the desire to facilitate title transactions is the need to protect interests that predate the root of title." *Blackstone v. Moore*, 2018-Ohio-4959, ¶ 8. Although the MTA is designed to simplify title transfers by extinguishing interests that have

disappeared from the record, there is often a great deal of room for interpretation as to whether a reference to a prior interest is too general to be preserved.

**{¶25}** In *Blackstone*, the root of title was a 1969 deed conveying real property from Mr. Carpenter to Mr. Blackstone. The Blackstone deed read, in pertinent part: "[e]xcepting the one-half interest in oil and gas royalty previously excepted by Nick Kuhn, their [sic] heirs and assigns in the above described sixty acres." *Id.* at ¶ 3.

**{¶26}** *Blackstone* set forth a three-step inquiry to determine whether a reference to a prior interest was preserved under the MTA: (1) Is there an interest described within the chain of title? (2) If so, is the reference to that interest a "general reference"? (3) If the answers to the first two questions are "yes," does the general reference to a prior property interest contain a specific identification within that reference to a recorded title transaction? *Id.* at ¶ 12.

**{¶27}** *Blackstone* held that, while the reference to the Kuhn interest was a general reference, it contained specific identification to a recorded title transaction because: 1) it included information about the type of interest; 2) it specified by whom the interest was originally reserved; and 3) there was no ambiguity or question about which prior interest was being referenced. *Id.* at ¶ 15.

<u>First Argument:</u>

Whether the prior property interest in the 1956 Dunfee Deed was a general reference without a specific identification of a prior recorded title transaction.

**{¶28}** Appellee asserts the 1956 Dunfee Deed is the root of title. Assuming arguendo that this is true, Appellants argue that the reference it contains to a prior oil and gas royalty is not a general reference: "subject also to such interest in the oil and gas

royalties as have hereto been reserved by former grantors." Appellants contend that this language can be deemed specific under the *Blackstone* test, because it is a specific, identifiable reservation of mineral rights using the same language that created the right. Appellants cite *Erickson v. Morrison*, 2021-Ohio-746 in support. Appellants also contend that there is a reference to the 1925 Ramsey Deed within the 1956 Dunfee Deed, and that this reference is a sufficient specific identification of a prior recorded title transaction. These two arguments will be reviewed separately.

**{¶29}** This appeal requires us to examine the three-step analysis established in *Blackstone*. The first step is to determine whether the 1956 Dunfee Deed contains a reference to a prior mineral interest. It does; the deed states that the property is "subject also to such interest in the oil and gas royalties as have heretofore been reserved by former grantors."

**{¶30}** The second *Blackstone* question is whether the prior interest is general or specific. The property interest mentioned ("oil and gas royalties . . . reserved") does not identify who the "former grantors" were, in what document the reservation was made, what the actual interest reserved might have been (the entire royalty, a one-half royalty, a participating or non-participating royalty, etc.), or whether any interests were actually reserved at all. It refers only to former grantors, meaning that a search of all prior records of all former grantors is necessary, and even then, the search might not uncover any reserved prior royalty interests. This type of reference clearly defeats the purpose of the MTA, which is to simplify title searches, remove stale references in the record, and limit the search to 40 years. *Erickson* at ¶ 16.

Case No. 23 BE 0047

**{¶31}** Since there is a reference to a prior property interest, and this reference was general, the third step under *Blackstone* is to determine whether the reference to a prior interest contains specific identification of a recorded title transaction. Examining the section of the 1956 Dunfee Deed that contains the reference to royalties, it is obvious there is no specific identification of any other recorded instrument, and the *Blackstone* inquiry is at an end. The 1956 Dunfee Deed transferred title free of any prior reserved oil and gas royalties, unless some other exception or savings event under the MTA applies.

**{¶32}** Appellants argue that it is not enough simply to look at the boilerplate language in the 1956 Dunfee Deed in isolation. They contend a recitation of what seems to be boilerplate language regarding a prior mineral interest can be deemed a "specific reference" rather than a "general reference" under *Blackstone* in some situations. This is a questionable interpretation, at best. Appellants rely on the *Erickson* case for the proposition that a general prior interest contained in a purported root of title was not required to contain both the type of prior interest, and by whom it was reserved, to be deemed "sufficiently specific" to overcome the *Blackstone* test. *Id.* at ¶ 24. *Erickson* posited that the type of general reference that was meant to be extinguished by the MTA was vague boilerplate language such as "subject to easements and use restrictions of record," which was a standard generic phrase used in many conveyances. *Id.* at ¶ 30. Such a general reference "leaves it unclear whether a prior interest in fact exists." *Id.* This type of generic, standardized text is exactly the type of reference extinguished by the MTA.

**{¶33}** The reservation that was repeated in each deed in *Erickson* was:

Excepting and reserving therefrom all coal, gas, and oil with the right of first parties, their heirs and assigns, at any time to drill and operate for oil and gas and to mine all coal with further right to build and maintain reservoirs, pipe lines, and the use of reasonable necessary roads; the said first parties their heirs and assigns, being liable and required to pay all taxes assessed against their said property and any damages caused to growing crops by any of such operations. All such operations for coal shall be outside of and leave one acre of solid coal under the dwelling house and under the barn and no drilling for oil or gas shall be within one hundred yards of the said dwelling house, barn, and other buildings located on said farm.

*Erickson v. Morrison*, 2019-Ohio-5430, ¶ 36 (5th Dist.).

**{¶34}** According to *Erickson*, a person searching through the title record should understand that the extensive and detailed "excepting and reserving" paragraph referred to a specific interest contained in a prior title document, and thus, would lead any reasonable person to continue to search through the record to find the specific interest. This would be true in spite of the fact that the names of the original grantor and grantee were not included in the reservation paragraph. The reservation in *Erickson* was not generic or vague language, and it clearly refers to an existing interest. The property interest was recited in the 1949 root of title in *Erickson* and was repeated in every subsequent title document, verbatim, except for the change of a single word. All of these factors led the *Erickson* court to conclude that the reserved interest served as an exception to the MTA, and was preserved.

**{¶35}** In this case, the original interest Appellants claim to own is from the 1902 Wise Deed: "excepting the one half (1/2) of the oil and gas royalty." This is, in itself, a very simple, generic, and boilerplate description of the interest, rather than the detailed property interest found in *Erickson*. Assuming, though, that the 1902 Wise Deed exception language was clear enough that it could be traced through the record, this description is not the language that Appellants claim as being repeated in 1956, 1972, 1974, and 1995 deeds. The 1956 Dunfee Deed stated: "subject also to such interest in the oil and gas royalties as have heretofore been reserved by former grantors." The 1974 Porter Deed stated: "excepting also all oil and gas reserved by former grantors." This is obviously not the language used in the 1902 Wise Deed. The phrasing used in the 1956 and later deeds is boilerplate, generic, vague, and different than the original description of the property interest.

**{¶36}** Additionally, the later deeds do not mention that the interest was only a one-half interest. The later deeds do not even contain the same operative word as the 1902 Wise Deed. The Wise Deed preserves an "exception," whereas the subsequent boilerplate language preserves a "reservation." Although reservation and exception are often used synonymously today, they actually have different meanings. See *Goble v. CNX Gas Co., LLC*, 2023-Ohio-3603, ¶ 15 (7th Dist.) (defining the distinct terms "reservation" and "exception" in a deed). The facts of this case and the specific language used in these deeds is so different from the language used in *Erickson* that it clearly supports only the opposite conclusion, and underscores that the trial court did not err in its decision.

**{¶37}** Appellants also contend that the 1956 Dunfee Deed contains a specific identification of a prior recorded title transaction, because later in the deed there is a reference to "premises conveyed by Aaron C. Ramsey and Retta J. Ramsey . . . by deed dated April 1, 1925, and recorded in Belmont County Record of Deeds, Volume 258, page 466."  This is undoubtedly a specific identification of the 1925 Ramsey Deed. Unfortunately for Appellants, in all of caselaw springing from *Blackstone* that has interpreted the MTA general/specific prior interest problem, the most important consideration was whether the general reference to a prior interest contains wording within the reference itself specifically identifying a prior recorded title transaction.  It is not enough that somewhere in the entire document there is vague mention in some portion that a prior recorded title transaction exists.  In *Blackstone*, for example, the prior reference to "one-half interest in oil and gas" contained, within the same sentence, the specific identification of "Nick Kuhn, their [sic] heirs and assigns."  *Id.* at ¶ 3.

**{¶38}** In the instant case, the reference to the 1925 Ramsey Deed is found only in a new paragraph that refers to "the right to run cattle" and the right to remove "all presently growing crops" until April 1, 1957.  If these were the rights that Appellants sought to preserve, then the reference to the 1925 Ramsey Deed would certainly factor in our analysis, and we would recognize that these rights expired on April 1, 1957. Further, the prior recorded title transaction on which Appellants rely is an equally general 1925 deed, not the 1902 deed containing the interest Appellants are trying to preserve. The claimed prior interest under review here is "interest in the oil and gas royalties as have hereto been reserved by former grantors."  (1956 Dunfee Deed.)  In the section of the deed where this language appears, there is no identification of any prior recorded

instrument. Based on the law of *Blackstone*, this is where the reference to the 1925 Ramsey Deed, or more correctly, the reference to the 1902 Wise Deed, was required to appear.

**{¶39}** Appellants also argue that the facts of this case align most closely with a very recent case of ours, *Wolfe v. Bounty Minerals LLC*, 2024-Ohio-2460, ¶ 33 (7th Dist.). Based on our holding in *Wolfe*, Appellants urge us to reverse the trial court judgment. The main dispute in the *Wolfe* case was whether an exception for oil and gas created in a 1921 deed was preserved in a deed in 1966. The parties agreed that all of the deeds after 1921, and through 1950, properly preserved the interest created in the 1921 deed. The question was whether the 1966 deed appropriately incorporated by reference the recorded title information of the 1950 deed in a manner that satisfied the *Blackstone* test. *Id.* at ¶ 70. *Wolfe* held that a prior interest described in a deed from 1921 was preserved in the 1966 deed through incorporation by reference. *Id.* at ¶ 76.

**{¶40}** Our opinion in *Wolfe* was released on June 27, 2024, the same day that Appellee filed its response brief. Therefore, Appellee did not have an opportunity to address any matters raised by our *Wolfe* opinion. Appellants raised *Wolfe* in their reply brief.

**{¶41}** The situation in *Wolfe* was considerably more complex than the case at bar, and the deed history was particularly convoluted. The basic controversy in *Wolfe* regarding incorporation by reference has little, if anything, to do with the issue we are confronted within the current appeal. One thing is clear, though: the prior interest that was disputed by the parties in *Wolfe* as being preserved, or extinguished, under the MTA was nothing like the prior interest in this case.

**{¶42}** In *Wolfe*, the interest created in 1921 was an exception for: "All the oil and gas in and under the above described tracts of land, with the right at all times for the party of the first part (W.A. Holmes) his heirs or assigns, to enter upon said premises for the purpose of drilling for oil, gas, water or other coals, and with the right to lay pipe lines, erect power houses, tanks, machinery, etc sueful [sic] and necessary in operating for oil and gas." *Id.* at ¶ 4. This exact language was repeated verbatim in deeds filed in 1924, 1930, 1940, 1950. The parties did not dispute that the 1950 deed properly preserved the prior interest by repeating the 1921 language. Therefore, even before getting to the actual controversy in *Wolfe*, it is apparent that the case does not aid Appellants' argument, here. Unlike the problem currently before us, the *Wolfe* prior interest is much like the one described in *Erickson*, in that it is very detailed. It contains the name of the original 1921 grantor, and could easily be found in the title record.

**{¶43}** The problem in *Wolfe* was that the 1966 deed was the most recent deed in the title record, but it did not directly quote the 1921 exception language within the deed. Instead, the 1966 deed said that it was subject to the "exceptions, reservations, conditions" stated in Exhibit A, which was attached. *Id.* at ¶ 71. Exhibit A specifically stated that it was attached to the deed and formed a part of the deed. Exhibit A was quite detailed, and identified the 1950 deed by grantor and grantee, the date of the instrument, and the deed volume and page number.

**{¶44}** The controversy in *Wolfe* was over incorporation by reference, and not about the third *Blackstone* question. In this appeal, the controversy directly involves the third *Blackstone* question: does a general reference to a prior recorded interest contain a specific identification of a recorded title transaction? It is apparent from this record that

the general reference to prior royalties in the 1956 Dunfee Deed does not contain a reference to any prior recorded title transaction.

Second Argument:

Whether the trial court should have relied on the 1974 Porter Deed as the root of title.

{¶45} As Appellants' arguments in their first sub-argument are unpersuasive, we turn to their second. Appellants contend that the 1956 Dunfee Deed is not necessarily the root of title. Appellants posit that the 1974 Porter Deed is the root of title. They argue that as Appellee's complaint was filed on March 11, 2021, this should have served as the beginning date for the 40-year lookback period under the MTA. The 1974 deed was the deed filed the closest to 40 years prior to the filing of the complaint. Thus, Appellants claim that the relevant 40-year period in which we are to examine marketability is 1974 to 2014.

{¶46} As we have has previously explained, the determination of the "root of title" contains two elements. *Senterra Ltd. v. Winland*, 2019-Ohio-4387, modified on reconsideration, 2019-Ohio-5458, aff'd, 2020-Ohio-3018, and aff'd, 2022-Ohio-2521. The first element is temporal, meaning that the root of title must be at least 40 years prior to the date marketability is being determined. *Id.* at ¶ 53. We must examine the title records of the following 40 years to see if there is anything in the record purporting to divest the claimant of the claimed interest. *Id.* at ¶ 56. If a preserving act is found in that succeeding 40-year period, the claimant must look to a prior title transaction further back than 40 years. *Id.* This process continues until there is an unbroken 40-year period of clear title to the interest. The temporal aspect is first backward, looking at least 40 years, and then forward, looking for 40 years, in order to find an unbroken title for a 40-year time period.

Case No. 23 BE 0047

**{¶47}** The second element is substantive, meaning that root of title purports to create the interest asserted by the claimant "upon which he relies as a basis for the marketability of his title." *Id.* at ¶ 53, citing R.C. 5301.47(E).

**{¶48}** Appellee is claiming that the 1956 Dunfee Deed is their root of title because it is the deed that fails to mention the exception of a 1/2 oil and gas royalty. In other words, Appellee argues that the title record substantially changed in 1956, and that Appellants did not correct the title for at least the next 40 years. Any chance for Appellants to reassert their claim to the Wise 1/2 Royalty ended in 1996. Because the record was not corrected in the forty years after the 1956 Dunfee Deed, the royalty exception was extinguished by operation of the MTA. It is the 1956 Dunfee Deed that actually created Appellee's claim to the Wise 1/2 Royalty because it is the deed that first omits or extinguishes the Wise 1/2 Royalty.

**{¶49}** Appellee could not rely on the 1974 Porter Deed because, as part of its reference to "oil and gas reserved by former grantors," it mentions the recorded 1972 Sheba Deed. Similarly, the 1972 Sheba Deed prior royalty language refers to the recorded 1956 Dunfee Deed. Therefore, the most recent deed beyond the 40-year MTA period that establishes Appellee's claim is the 1956 Dunfee Deed. On this basis, Appellants' second sub-argument is also unpersuasive.

<u>Third Argument:</u>

Whether the oil and gas leases on the property were "savings events" under the MTA

as to prevent extinguishment of the 1902 Wise 1/2 Royalty.

**{¶50}** Moving to Appellants' third sub-argument, we look at whether the Wise 1/2 Royalty is preserved by some means other than by use of a specific reference in the 1956

Case No. 23 BE 0047

Dunfee Deed to a prior recorded title transaction. As discussed earlier, there are three major methods for preserving a prior interest in the marketable chain of title: the interest is specifically referenced in the record chain of title; the holder of the interest recorded a notice claiming the interest; or the interest arises out of a title transaction that was recorded subsequent to the effective date of the root of title. *West v. Bode* at ¶ 16. The third of these three saving events is based on R.C. 5301.49(D), which provides: "Such record marketable title shall be subject to . . . [a]ny interest arising out of a title transaction which has been recorded subsequent to the effective date of the root of title . . . ." Appellants argue that even if the 1902 Wise 1/2 Royalty is not specifically identified in the 1956 Dunfee Deed, the royalty interest arises out of other title transactions subsequent to the Dunfee Deed.

{¶51} Appellants cite to twelve oil and gas leases, executed between 1934 and 2011, that are part of the record. Appellants contend that oil and gas leases have been determined time and again to be title transactions in the context of the MTA. Six of the cited leases were executed in the 40-year period after the 1956 Dunfee Deed.

{¶52} There is no question that leases may be title transactions pursuant to R.C. 5301.47(F). Oil and gas leases can be considered title transactions because they might affect title to real property. *Eisenbarth v. Reusser*, 2014-Ohio-3792, ¶ 32 (7th Dist.); *Pernick v. Dallas*, 2021-Ohio-4635, ¶ 31 (7th Dist.); *Chesapeake Exploration, L.L.C. v. Buell*, 2015-Ohio-4551. The defining question is whether the 1902 Wise one-half oil and gas royalty exception "arises out of" the leases cited by Appellants such that the leases create a savings event under the MTA.

**{¶53}** The meaning of the words "arising out of a title transaction" may best be explained by an illustration. In *Heifner v. Bradford*, 4 Ohio St.3d 49 (1983), the question was posed regarding whether a transfer of oil and gas rights by virtue of a probated will amounted to a savings event under R.C. 5301.49(D). *Heifner* shows how a title transaction outside the root of title may be a saving event for MTA purposes for an interest described within the chain of title. In 1916, Elvira Sprague and her husband conveyed their land to Fred H. Waters, but they reserved the oil and gas rights. In 1936, Mr. Waters conveyed the property, but did not mention the oil and gas reservation. One party claimed that the 1936 deed was the root of title, that there were no savings events between 1936 and 1976, and that the MTA extinguished the 1916 oil and gas reservation. The other party argued that the oil and gas reservation was preserved in 1957 when Elvira Sprague died and her will was probated. The oil and gas reservation was mentioned in the affidavit of transfer to the beneficiaries of her will. *Heifner* held that the 1957 affidavit of transfer was a title transaction and savings event, preserving the 1916 oil and gas reservation. It did not matter that the 1957 affidavit of transfer was outside the surface owners' chain of title. The oil and gas reservation "arose out of" the 1957 will and affidavit of transfer, in that it was transferred from Elvira Sprague to her beneficiaries, thereby acting as a savings event.

**{¶54}** Another illustrative case is *Pernick v. Dallas*, 2021-Ohio-4635 (7th Dist.), not accepted for review 2022-Ohio-994. In *Pernick*, the plaintiffs acquired property in 1998 that did not contain any oil or gas reservation. Parties later came forward claiming oil and gas rights stemming from a 1925 deed. All parties agreed that, under the MTA, the root of title was a 1962 deed that contained no reservation of oil and gas rights. The

defendants claimed, though, that the 1925 rights were preserved in a lease recorded in 2002. The trial court and this Court held that the 2002 lease did not act as a savings event because it was entered into by the surface owner, not the defendants, and because the leases contained no reference to the 1925 oil and gas reservation: "there is no language in this lease referencing the [defendants'] heirs or even suggesting that anyone other than [plaintiffs] own the mineral interest." *Id.* at ¶ 33.

**{¶55}** The situation in *Pernick* is similar to the facts of this case. Although Appellants have mentioned the existence of a number of leases, Appellants do not cite any specific information in these leases that preserves the 1902 Wise 1/2 Royalty. Their argument appears to be that the mere existence of leases affects the royalty interest, since Appellants should receive some of the royalties from the leases. To Appellants, this is enough to satisfy the requirement that the interest is "arising out of a title transaction" pursuant to R.C. 5301.49(D). Again, unfortunately for Appellants, this is not the manner in which R.C. 5301.49(D) operates.

**{¶56}** According to *Heifner*, the reason that the 1916 oil and gas reservation was preserved was because the later-filed title transaction (the affidavit of transfer) was the equivalent of filing a "notice of claim" under R.C. 5301.51 and 5301.52. *Heifner* at paragraph two of the syllabus. The right to file a "notice of claim" means that: "Any person claiming an interest in land may preserve and keep effective the interest by filing for record during the forty-year period immediately following the effective date of the root of title of the person whose record title would otherwise be marketable, a notice in compliance with section 5301.52 of the Revised Code." R.C. 5301.51(A). The interests kept alive in *Heifner* were the oil and gas rights in their entirety. The purported root of title

was from 1936, so Elvira Sprague was still within the 40-year MTA period when she conveyed the oil and gas rights through her will in 1957.

**{¶57}** In this case, Appellants are attempting to preserve the right to receive non-participating oil and gas royalties by virtue of title transactions (oil and gas leases) in which they had no right to participate, and that did not mention or affect non-participating royalties in any way. Royalties are distinct from the right to drill for oil and gas. *White Revocable Tr. v. Kemp*, 2023-Ohio-4513, ¶ 29 (7th Dist.) Royalties are the right to share in the profit made from oil and gas drilling, free from the expenses of production. *Id.* Royalties are a smaller and distinct part of the entire mineral estate. *Id.* at ¶ 33. Non-participating royalties are an even smaller part of the bundle of rights contained in a mineral estate. If a party is trying to prove that a non-participating royalty interest is preserved in the chain of title, a description of that interest must appear in the recorded documents. *Id.* The leases on which Appellants rely do preserve the right to drill for oil and gas, and if that was the right Appellants were claiming their argument might be well-taken. However, Appellants are trying to preserve a completely different right, i.e., a non-participating royalty, that is not affected by the surface owner entering into a drilling lease.

**{¶58}** Appellants' argument has been rejected in *Pernick*, *Heifner*, and several similar cases. An interest does not arise from a title transaction simply by virtue of some amorphous connection to the title transaction. The interest that the claimant seeks to preserve must be identified in the title transaction. There is no connection between the recorded leases cited in Appellants' brief and the 1902 Wise 1/2 Royalty. Other than mentioning the mere existence of the leases, Appellants have not shown that the Wise 1/2 Royalty can be found by looking at any of these leases. Thus, Appellants' third sub-

argument is also unpersuasive and Appellants' sole assignment of error is overruled in its entirety.

Conclusion

**{¶59}** The trial court declared that the root of title in this case was the 1956 Dunfee Deed, and that the 1902 Wise 1/2 Royalty was not preserved in that deed and was extinguished by operation of the MTA. Appellants argue that the reference in the 1956 Dunfee Deed to "oil and gas royalties as have hereto been reserved by former grantors" was specific enough to satisfy the *Blackstone* test and should not have been declared extinguished. The trial court was correct in holding that that the reference in the 1956 Dunfee deed to prior royalty interests was general, and that this reference to a general prior interest did not contain a specific identification of a recorded title transaction as required by *Blackstone*. Without a specific identification to a recorded title transaction, the 1902 royalty interest was extinguished. Appellants' other argument, that certain oil and gas leases that are part of the record acted as savings events to preserve the royalty interest, is likewise unpersuasive. Although a lease can act as a savings event under the MTA, the leases that Appellants rely upon do not contain any connection to the 1902 Wise 1/2 Royalty. Appellants' assignment of error is overruled. The judgment of the trial court is affirmed.

Robb, P.J. concurs.

Dickey, J. concurs.

Case No. 23 BE 0047

[Cite as *RL Clark, L.L.C. v. Hammond*, 2024-Ohio-5051.]

---

For the reasons stated in the Opinion rendered herein, Appellants' assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, is affirmed.  Costs to be taxed against the Appellants.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**