[Cite as *Chestnut Ridge 156, L.L.C. v. Miller*, 2026-Ohio-1018.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## JEFFERSON COUNTY

CHESTNUT RIDGE 156 LLC,

Plaintiff-Appellant,

v.

DORIS E. MILLER, et al.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 25 JE 0012

---

Civil Appeal from the
Court of Common Pleas of Jefferson County, Ohio
Case No. 24-CV-170

**BEFORE:**
Cheryl L. Waite, Mark A. Hanni, Katelyn Dickey Judges.

---

**JUDGMENT:**
Reversed and Remanded.

---

*Atty. Sean E. Jacobs* and *Atty. Cody Smith*, Emens Wolper Jacobs & Jasin Law Firm Co.,
for Plaintiff-Appellant Chestnut Ridge 156 LLC

*Atty. John Kevin West* and *Atty. John C. Ferrell*, Steptoe & Johnson PLLC, for Defendant-
Appellee Gulfport Appalachia, LLC

*Atty. William A. Peseski* and *Atty. Rebecca Singer-Miller*, Weston Hurd LLP, for
Defendant-Appellee Malone University

*Atty. Timothy J. Kincaid*, for Defendant-Appellee Mento United Methodist Church

*Atty. Mark F. Fischer*, Yukevich, Marchetti, Fischer, Zangrilli, P.C. for Defendants-Appellees Betty Ann Kuester Chivers and Robert Dale Kuester

Dated:  March 24, 2026

---

**WAITE, P.J.**

{¶1}    Appellant Chestnut Ridge 156 LLC ("Chestnut Ridge") appeals the October 10, 2024 judgment of the Jefferson County Court of Common Pleas granting a motion for judgment on the pleadings filed by Malone University, Mentor United Methodist Church, Gulfport Appalachia, LLC, Betty Ann Kuester Chivers, and Robert Dale Kuester. Chestnut Ridge contends the trial court erred by failing to continue analyzing for other possible root of title deeds after finding that the most recent possible root of title deed had preserved the mineral interest at issue.  Because the line of cases from both this Court and the Ohio Supreme Court have established that a trial court must continue looking at all potential root of title deeds that exist between the severance deed and the most recent qualifying root of title deed to ensure that an interest has not been extinguished, and this trial court analyzed only the most recent possible deed, Appellant's argument has merit. The judgment of the trial court is reversed and remanded for further proceedings consistent with this Opinion.

Factual and Procedural History

{¶2}    This matter concerns an Ohio Marketable Title Act ("MTA") claim involving oil and gas that lies under 28.5271 acres of property located in Wells Township, Jefferson County.  The property as a whole consists of four tracts:  parcel 50-0081-000 which is

Case No. 25 JE 0012

20.524 acres; parcel 50-0081-002 which is 2 acres; parcel 50-0081-003 consisting of 5.0031 acres; and parcel 00424-000, 1 acre. However, this appeal concerns only 28.5271 acres of this land.

*Severance Deed*

{¶3}   On September 17, 1946, William and Anna M. Verhovec conveyed both the surface and mineral rights of the property in question to John Kuester. That deed was recorded on September 19, 1946. Then, on September 30, 1946, John and Lily Kuester conveyed one-half of the oil and gas underneath the property to Walter C. Ong (the "Ong Interest"). This deed was recorded on November 23, 1962 ("severance deed"). The Kuesters retained the remaining one-half interest in the minerals (the "Kuester Interest").

{¶4}   This appeal concerns only the Kuester Interest. While the surface and mineral interests have been conveyed many times, only the deeds pertinent to the issue in question will be addressed to avoid confusion.

*Kuester Interest*

{¶5}   John Kuester died on August 20, 1953, apparently intestate. His interest passed to his wife, Lily, their daughter Erla (Kuester) Mather, and their son, Dale Kuester. Both Erla and Dale are relevant to this appeal.

{¶6}   On October 17, 1970, Lily died intestate. Her rights to the Kuester Interest passed to William T. Cooper. William died four years later on April 29, 1974, also intestate. His interest passed to his wife, Frances L. Cooper and their daughter, Lana (Cooper) Kahan. Lana Kahan was named as a defendant in the instant proceedings. On October 21, 1986, Frances died, apparently intestate. Her interest passed to Charles Wilfred Miller.

{¶7}   On November 21, 1997, Erla (daughter of John Kuester) died testate.   In her will she left the residual of her estate, which included her rights in the Kuester Interest, to three parties:  her brother, Dale (30%); Mentor United Methodist Church (50%); and Malone College (20%).  Since that time, Malone College has changed its name to Malone University.  Each of these parties, or their heirs, were named defendants and are parties to this appeal.

*Surface History*

{¶8}   Chestnut Ridge provides a detailed discussion of the surface history, however, there are only four relevant deeds.  Before addressing those deeds, some clarification is helpful, as the many conveyances and described parcels in this case are confusing.  The mineral rights to 46.82 acres associated with all of the parcels were split into the Ong and Kuester Interests, leaving the Kuester Interest to include approximately 28.5271 acres.  Only that acreage is at issue in this appeal.  It appears that the parties rounded the number of acres up or down during this lawsuit, making those figures inconsistent at times.  However, the exact number of acres does not appear critical to resolution of this issue.

{¶9}   On April 15, 1970, DeAnna R. Brown conveyed 5 acres of surface rights associated with the Kuester interest to Carl A. Brown.  This deed was recorded on April 17, 1970 and does not reference the oil and gas severance.

{¶10}  On June 13, 1972, Anna Marie Verhovec conveyed the remaining 23.946 acres to Carl Brown.  This deed was recorded on June 19, 1972 and also does not reference the oil and gas severance.  The 1970 and 1972 deeds, combined, cover the

entire Kuester Interest acreage, thus all of the surface associated with the Kuester Interest was conveyed to Carl Brown.

{¶11} As part of a judgment decree of divorce, on September 24, 1981, Rosemary Elaine (Brown) Gron conveyed her interest in the 28.5271 acres to Carl A. Brown. The decree was recorded on September 28, 1981, and does not reference the oil and gas severance.

{¶12} On May 26, 2017, Appellant Chestnut Ridge obtained the surface rights to the 28.5271 acres. The deed did not reference the oil and gas severance. Although not relevant, it appears that Chestnut Ridge also obtained the Ong Interest.

*Oil and Gas Leases*

{¶13} On September 27, 2017, Dale and Ruth Kuester (apparently John's son and the son's wife) entered into an oil and gas lease with Wolf Run Land, LLC. The lease was recorded on June 21, 2018.

{¶14} Shortly before this lease was signed, on June 28, 2017, Chestnut Ridge entered into a paid-up lease with Appellee Gulfport. Gulfport paid Chestnut Ridge royalties for the one-half Ong Interest but not the Kuester Interest. After a series of assignments, Ascent received the lease. In 2021 and 2022, Ascent pooled portions of the land and drilled wells.

{¶15} On November 8, 2018, Appellee Mentor United Methodist Church entered into an oil and gas lease with Ascent. That lease was recorded on December 27, 2018. On that same date, Ascent entered into an oil and gas lease with Malone University. That lease was recorded on January 9, 2020.

{¶16} Dale Kuester died one year later and his interests were transferred to his wife, Ruth, through a certificate of title. On December 23, 2020, Ruth conveyed her interest to Betty Ann Kuester Chivers and Robert Dale Kuester. Robert Dale and Betty Ann were named defendants and are parties to this appeal.

{¶17} Meanwhile, on April 20, 2019, Ascent entered into two oil and gas leases, one with Lana Kahan and one with Charles Miller and his wife, Doris. Both of these leases were recorded on May 16, 2019. Charles and Doris apparently lived in North Carolina. Charles died on May 30, 2021. Although he lived in North Carolina, his estate was opened in Jefferson County. On October 13, 2022, a certificate of transfer conveyed any interest held by Charles to Doris.

*Complaint and Trial Court Proceedings*

{¶18} On April 12, 2024, Appellant Chestnut Ridge filed an action seeking to quiet title in the property and asking for declaratory judgment against Doris Elizabeth Miller, Lana Kahan, Mentor United Methodist Church, Malone University, Betty Ann Kuester Chivers, Robert Dale Kuester, and Ascent Resources-Utica LLC. In the action Appellant asserted four claims. In the first two, it sought quiet title as to the 23.946 acres. In the third, it asked to quiet title to a parcel of land not at issue in this appeal. The fourth claim sought a declaratory judgment as to all acreage. Claim three was dismissed by agreement of all parties during the trial court proceedings.

{¶19} There is a lengthy procedural history in the trial court, however, much of this is irrelevant to the instant appeal. After filing the complaint, all defendants filed an answer and some filed a counterclaim: Mentor United Methodist Church, Malone University, Betty Ann Kuester, and Robert Dale Kuester. In their counterclaim, these defendants

contended that Erla Sue Mather, who held rights to the Kuester Interest, died testate on November 21, 1997. Her will, which was probated in Lake County, contained a residual clause which distributed her interest as follows: 30% to Dale Kuester, 50% to Mentor United Methodist Church, and 20% to Malone College (now Malone University). The Defendants-Appellees collectively argue that the will constituted a savings act, preventing extinguishment. Despite Appellees' exclusive reliance on this will, Erla's will has never been produced or admitted in any form during these proceedings.

{¶20} However, the will is not actually pertinent to the issue before us, despite Appellees' arguments. The key to this particular analysis was, and continues to be, the root of title deed. According to Chestnut Ridge, the 1970 and 1972 deeds are the relevant root of title deeds for their respective acreage. According to all of the Appellees, the 1981 deed is the only root of title deed.

{¶21} On September 10, 2024, Appellees Malone University and Mentor United Methodist Church filed a joint motion for partial judgment on the pleadings. This motion included counts 1, 2, and 4, which are the only relevant counts in this appeal. Their motion asserted that the date of filing the complaint provides the beginning point for determining marketability. The complaint was filed on April 12, 2024. Forty years before that date is April 12, 1984. The 1981 deed is the most recent deed preceding that date. Thus, Appellees concluded that the 1981 deed is the root of title. In their response to the trial court, Chestnut Ridge responded that 1970 and 1972 deeds are also possible root of title deeds, and that a trial court must continue to examine potential root of title deeds in the chain of title until reaching the severance deed. Appellant pointed out that the only

way a court may stop its examination before reaching the severance deed is if the court finds a potential root of title deed that has a forty-year period without a preservation act.

{¶22} On October 10, 2024, the trial court granted Appellees' motion but entered an order granting "partial summary judgment" (instead of granting the judgment on the pleadings requested by Appellees.) The court agreed with Appellees that it need only review the most recent root of title deed, and found that a savings act preventing extinguishment:

> Plaintiff also complains that two savings events were filed after the 1981 Deed and that they disqualified the 1981 Deed as being the root of title. This Court does not see that anywhere is the legislature's definition of "root of title" under O.R.C. 5301.47(E). Plaintiff's definition would also tend to undermine the whole concept of a savings event.

(10/10/24 J.E.)

{¶23} Chestnut Ridge has timely appealed the trial court's entry. Interestingly, although counsel for Mentor United Methodist Church filed an appearance, no brief was filed on the Church's behalf. Ascent has also filed no brief.

*MTA*

{¶24} The MTA was enacted in 1961 "to extinguish interests and claims in land that existed prior to the root of title, with 'the legislative purpose of simplifying and facilitating land title transactions by allowing persons to rely on a record chain of title.' " *Corban v. Chesapeake Exploration, L.L.C.*, 2016-Ohio-5796, ¶ 17, quoting R.C. 5301.55; see also *Cattrell Family Woodlands, LLC v. Baruffi*, 2021-Ohio-4660, ¶ 12 (7th Dist.).

**{¶25}** In theory, the process of establishing a reliable chain of title is simplified by requiring proof of record title going back only 40 years, rather than requiring proof through the entire chain of title that may span two hundred years or more. Under the MTA, a person who has an unbroken chain of record title to any interest in land for at least 40 years has a "marketable record title" to the claimed interest. R.C. 5301.48.

**{¶26}** A marketable record title "operates to extinguish" stale interests and claims that existed prior to the effective date of the root of title. R.C. 5301.47(A); *Erickson v. Morrison*, 2021-Ohio-746, ¶ 16. Prior interests beyond the 40-year period established by the MTA are "null and void." R.C. 5301.50. An interest that has been extinguished by the 40-year limitations period cannot be revived. R.C. 5301.49(D).

**{¶27}** There are three major methods for preserving a prior interest in the marketable chain of title pursuant to the MTA: (1) the preexisting interest is specifically identified in the muniments that form the record chain of title; (2) the holder of the preexisting interest has recorded a notice claiming the interest, in accordance with R.C. 5301.51; or (3) the preexisting interest arose out of a title transaction that was recorded subsequent to the effective date of the root of title. *West v. Bode*, 2020-Ohio-5473, ¶ 16.

**{¶28}** A critical term in any MTA analysis is "root of title." This is defined in R.C. 5301.47(E): " 'Root of title' means that conveyance or other title transaction in the chain of title of a person, purporting to create the interest claimed by such person, upon which he relies as a basis for the marketability of his title, and which was the most recent to be recorded as of a date forty years prior to the time when marketability is being determined."

**{¶29}** R.C. 5301.49 sets out exceptions that "serve as a shield" to protect certain property interests from the extinguishing effect of the MTA. *Spring Lakes, Ltd. v. O.F.M.*

*Co.*, 12 Ohio St.3d 333, 335 (1984). These exceptions are referred to as "saving events." *Corban* at ¶ 18. R.C. 5301.49(A) provides, in pertinent part:

Such record marketable title shall be subject to:

(A) All interests and defects which are inherent in the muniments of which such chain of record title is formed; provided that a general reference in such muniments, or any of them, to easements, use restrictions, or other interests created prior to the root of title shall not be sufficient to preserve them, unless specific identification be made therein of a recorded title transaction which creates such easement, use restriction, or other interest . . .

## ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN DISMISSING COUNTS ONE, TWO, AND FOUR OF APPELLANT'S COMPLAINT WITH PREJUDICE.

{¶30} Chestnut Ridge argues that the trial court incorrectly used the 1981 deed as the sole root of title and stopped its analysis after finding a savings act prevented extinguishment. Chestnut Ridge argues that the 1970 and 1972 deeds are also root of title deeds pursuant to this Court's precedent, and that no savings event occurred within the forty years that followed, thus the Kuester Interest has been abandoned.

{¶31} Appellees collectively argue that once a title transaction follows the relevant period after the most recent root of title deed, the interest is preserved.

Case No. 25 JE 0012

**{¶32}** We note here that the trial court created confusion in this case by styling its order as a decision granting partial summary judgment. On September 10, 2024, Appellee Malone University and Mentor United Methodist Church filed a "Joint Motion for Partial Judgment on the Pleadings" pursuant to Civ.R. 12(C). On October 10, 2024, the trial court appeared to grant their motion, but titled the entry as an order granting partial summary judgment. From this language, the court appears to have converted the motion for judgment on the pleadings into a motion for summary judgment. However, there is nothing in the record to indicate that the court gave the parties any notice it was making this conversion, particularly since the court had filed a pre-trial order nine days before it entered final judgment giving the parties discovery deadlines, deposition deadlines, and deadlines for filing any motion for summary judgment. While the court's entry seems to indicate that the court understood Appellees' motion sought dismissal of the complaint based solely on the complaint, itself, the parties base their arguments on the belief that the trial court granted summary judgment, not judgment on the pleadings.

**{¶33}** Although somewhat similar, the standards of Civ. 12(C) (motion for judgment on the pleadings) and Civ.R 56 (motion for summary judgment) are different. Again, the motion at issue was filed pursuant to Civ.R. 12(C). Civ.R. 12(C) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."

**{¶34}** An appellate court reviews a trial court's ruling on a Civ.R. 12(C) motion *de novo. Pelletier v. Mercy Health Youngstown, L.L.C.*, 2024-Ohio-2131, ¶ 10 (7th Dist.), citing *Ahmed v. Sargus*, 2005-Ohio-2382, ¶ 7 (7th Dist.). On review, the Court must construe all material allegations of the complaint as true and make all reasonable

inferences in favor of the nonmoving party. Where a motion pursuant to Civ.R. 12(C) is filed, dismissal is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts entitling him or her to relief." *Maternal Grandmother v. Hamilton Cty. Dept. of Job and Family Servs.*, 2021-Ohio-4096, ¶ 13, quoting *Reister v. Gardner*, 2020-Ohio-5484, ¶ 17. In contrast, where summary judgment is sought, evidence outside of the pleading must be introduced to support the parties' positions and will be granted only if no material fact is in dispute and the movant is entitled to judgment as a matter of law. In this matter, Appellees neither sought nor supported a motion for summary judgment, so the trial court was required to confine itself solely to the allegations contained in the complaint.

**{¶35}** With the correct standard of review in mind, we turn to the legal analysis. The trial court is correct in that the 1981 deed in this case is a potential root of title. The problem with the court's decision is that it stopped its analysis after finding a title transaction occurred forty years after that deed. There is no question that, pursuant to the clear line of cases arising from this Court and the Ohio Supreme Court, the analysis does not end after analyzing only this root of title deed. Contrary to the court's entry and Appellees' arguments, the MTA requires a court to continue to review every potential root of title deed within a chain of title up to the severance deed in order to determine if an interest in mineral rights was extinguished. Any ruling to the contrary would directly contradict the very essence behind MTA extinguishment, which provides that an extinguished interest cannot be revived. Failure to review every possible root of title deed within the chain of title could very well have the effect of reviving an extinguished interest. For example, in this case, if the interest is extinguished by virtue of the 1970 and 1972

deeds, as it appears to be based on the complaint, then merely reviewing the 1981 deed and going no further operates improperly to revive that extinguished interest.

{¶36} Turning to the law, "the point of marketability," is a somewhat fluid concept, as a chain of title does not merely contain just one possible root of title deed and multiple deeds can affect the marketability of a mineral interest. Based on the recent lineage of cases, it is quite clear that a court is to continue reviewing what this Court has called "potential roots of title" until it reaches either the severance deed or encounters a forty-year period without a savings act that would extinguish the interest.

{¶37} In reviewing the caselaw, it begins with *Senterra Ltd. v. Winland*, 2019-Ohio-4387 (7th Dist.). In *Senterra,* we addressed what constitutes an appropriate root of title. We explained that in order to constitute a "root of title," a "deed must merely account for the interest the person is claiming to have record marketable title to and not be the severance deed." *Id.* at ¶ 55. We explained:

> The next step is then to examine the recordings 40 years succeeding the title transaction to see if there is anything in the record purporting to divest the person of the claimed interest. For purposes of a mineral interest that could be a preservation act by the original reserver or his heirs or assigns. *If, for instance there is a preservation act within that 40 year period, then the title transaction at least 40 years preceding the date of when marketability is being determined does not qualify as the "root of title" because it does give the claimant record marketable title. Therefore, the next preceding deed must be examined.*

(Emphasis added.) *Id.* at ¶ 56.

**{¶38}** As addressed in *Senterra,* this rule comports with the process used by other states and the Model Act:

> Assuming the Model Act were enacted as written, an examiner inspecting title would use it as follows: beginning with the date forty years before the date on which he is determining title and moving chronologically backwards therefrom, he would find the most recently recorded conveyance of the subject parcel. This document is his potential root of title. After giving a cursory examination of the previous title documents to determine easements, interests owned by the federal government, and reversionary, possessory interests in leases, he would closely scrutinize the documents in the chain of title for the forty years immediately following the root. Finding no competing recorded interests, he could safely assume that all interests previous to the root of title not otherwise excepted were extinguished and that the title was defect free up to the date of the root. If, however, he found competing claims in the chain, he would go back to the next closest preceding conveyance and repeat the process. He would continue moving back until he found a conveyance followed by forty years of clean title. That document would be his root, and he could safely conclude that the act extinguished all competing interests recorded prior to that date.

*Id.* at ¶ 57, citing Hubbert, *Rocked by Rocket: Applying Oklahoma's MRTA to Severed Mineral Interests After Rocket v. Donabar*, 68 Okla. L. Rev. 381, 386 (2016). *See also*

Cohoon McStotts, *In perpetuity or for Forty Years, Whichever is Less: The Effect of Marketable Record Title Acts on Conservation and Preservation Easements*, 27 J. Land Resources & Envtl. L. 41, 46 (2007) (indicating Ohio has adopted a version of Model Act).

**{¶39}** In *Senterra* we began our analysis by starting with the date of marketability, however, we found the actual date of marketability to be of little consequence due to our earlier discussion. Nonetheless, we began by looking at the first point of marketability. We then went back forty years and found a potential root of title deed closest to that point, a 1971 deed. *Id.* at ¶ 63.

**{¶40}** Finding a possible preservation act that followed the deed, this Court stated that an unbroken chain of forty years did not exist following this deed. We explained that we must then "look for the deed preceding the 1971 Deed." *Id.* at ¶ 66. Finding a 1954 deed which was also a potential root of title, we reviewed the forty-year period following that deed to determine if a preservation act had occurred. Finding no savings act during that period, we affirmed the trial court's decision that the interest had been extinguished due to a forty-year period without a preservation act following a potential root of title deed. *Id.* at ¶ 68.

**{¶41}** Five years later, we again addressed the issue in *RL Clark, LLC v. Hammond,* 2024-Ohio-5051 (7th Dist.). In *RL Clark,* this Court reiterated that "[i]f a preserving act is found in that succeeding 40-year period, the claimant must look to a prior title transaction further back than 40 years. *Id.* This process continues until there is an unbroken 40-year period of clear title to the interest." *Id.* at ¶ 46, citing *Senterra.*

**{¶42}** While Appellee Gulfport's brief in the instant matter urges that *RL Clark* is contrary to the caselaw and the statute, *Senterra* is the case which originally addressed

and determined this issue. Notably, the Ohio Supreme Court accepted jurisdiction in *Senterra* and affirmed our Opinion. While the Court did not accept the case on that specific issue, it did conduct a limited review of this Court's analysis and took no issue with that analysis. *See Senterra, Ltd. v. Winland,* 2022-Ohio-2521, ¶ 25.

**{¶43}** In 2023, we reaffirmed *Senterra* in *Crozier v. Pipe Creek Conservancy LLC,* 2023-Ohio-4297 (7th Dist.). In *Crozier,* the parties conceded that the trial court erred by failing to continue reviewing the deed history to determine whether a title transaction saved an interest from extinguishment. *Id.* at ¶ 37. Hence, we held that the court erred in prematurely terminating its MTA analysis and remanded the matter to allow the trial court to conduct such a search. *Id.* at ¶ 55.

**{¶44}** Appellee Gulfport cites to *Hartline v. Atkinson,* 2020-Ohio-5606 (7th Dist.) to attack the *Senterra* holding. However, the exact issue in *Senterra* and the current case was not at issue in *Hartline,* which focused instead on the definition of a title transaction. Thus, no analysis to actually determine marketable title occurred, and it is distinguishable on that basis. Regardless, *RL Clark* and *Crozier* were released after *Hartline.* Two other cases cited by Gulfport fail for these same reasons. *See Warner v. Palmer,* 2019-Ohio-4078 (7th Dist.); *Carpenter v. Antero Resources Appalachian Corp.,* 2022-Ohio-4619 (7th Dist.).

**{¶45}** Contrary to the trial court's commentary within its judgment entry, a party may not "pick" a root of title that best suits their interests. We have clearly held that the process of evaluating potential root of title deeds must continue either until the court reaches the severance deed without finding an extinguishment, (allowing the interest

holder to retain the interest) or finds an act of extinguishment which cannot be revived using a later period of forty years containing a savings act.

**{¶46}** Appellee Gulfport appears to argue that Appellant Chestnut Ridge's position would render title transactions and R.C. 5301.49(D) meaningless. This is not an accurate claim. If a surface owner cannot locate a root of title deed within the chain of title leading up to the severance deed that fails to preserve the interest, then a savings act will prevent extinguishment. As such, preservation acts are not rendered meaningless.

**{¶47}** It is Appellees' view of the statute that would actually render a portion of the MTA irrelevant. The law is clear that an interest cannot be revived after it is extinguished. If the trial court were only to examine the latest root of title deed and stop its analysis if it finds a preservation act, it is entirely possible this would result in ignoring a prior root of title deed that does not contain an act of preservation and serve to revive that interest, contrary to law, as appears to be the case in this matter based on the record.

**{¶48}** The trial court, here, entered judgment without conducting a full analysis. It is insufficient for the court to simply review the most recent forty years after the 1981 deed and determine there was no extinguishment during that period. The court is required to review earlier deeds, up to the severance deed if necessary, to determine if an earlier deed extinguished the interest. As such, Appellant's sole assignment of error has merit and is sustained.

### Conclusion

**{¶49}** Appellant Chestnut Ridge argues that the trial court erred by failing to continue looking for and analyzing other possible root of title deeds after finding that the most recent deed had preserved the mineral interest at issue. Caselaw on this issue

clearly establishes that a trial court must continue looking at all deeds between the severance deed and the most recent qualifying deed to determine whether the interests were preserved. Because the trial court analyzed only the most recent possible deed, dismissal on the pleading was not appropriate in this case. Further, as the matter was not properly converted to summary judgment, summary judgment was equally barred in this case. Appellant's argument has merit and the judgment of the trial court is reversed and remanded.

Hanni, J. concurs.

Dickey, J. concurs.

_____

For the reasons stated in the Opinion rendered herein, Appellant's assignment of error is sustained and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Jefferson County, Ohio, is reversed. This matter is remanded to the trial court for further proceedings according to law and consistent with this Court's Opinion. Costs to be taxed against the Appellees.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

**<u>NOTICE TO COUNSEL</u>**

**This document constitutes a final judgment entry.**