[Cite as *Crozier v. Pipe Creek Conservancy, L.L.C.*, 2023-Ohio-4297.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## BELMONT COUNTY

DARRELL CROZIER ET AL.,

Plaintiffs-Appellees,

v.

PIPE CREEK CONSERVANCY, LLC ET AL.,

Defendants-Appellants.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 22 BE 0052**

---

Civil Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 17 CV 319

**BEFORE:**
David A. D'Apolito, Cheryl L. Waite, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Reversed, Vacated and Remanded.

---

*Atty. John C. Finnucan,* Finnucan & Associates, LLC and *Atty. James F. Mathews,* Baker, Dublikar, Beck, Wiley & Mathews, for Plaintiffs-Appellees Darrell Crozier et al. and

*Atty. Kyle W. Bickford* and *Erick A. Schramm, Jr.,* Hanlon, McCormick, Schramm, Bickford & Schramm Co., LPA, for Defendants-Appellants Pipe Creek Conservancy, LLC and Melissa M. Karkowski and

*Atty. Christopher W. Rogers,* Frost Brown Todd, LLC, for Defendant Ascent Resources-Utica, LLC and

*Atty. O. Judson Scheaf III,* Hahn, Loeser & Parks, LLP, for Defendant XTO Energy, Inc.

Dated: November 28, 2023

---

**D'Apolito, P.J.**

{¶1} Defendants-Appellants, Pipe Creek Conservancy, LLC ("Pipe Creek") and Melissa M. Karkowski ("Melissa")(surface owners) appeal the September 22, 2022 judgment entry of the Belmont County Court of Common Pleas, granting the motion/supplemental motion for summary judgment of Plaintiffs-Appellees, Darrell Crozier, Karen Pinney Shelton, and Robert Crozier (purported mineral interest owners), and denying the Appellants' corresponding motion/supplemental motion for summary judgment in this quiet title action filed pursuant to the Marketable Title Act ("MTA") and Dormant Mineral Act ("DMA") [1]. In addition, Pipe Creek appeals the trial court's April 12, 2018 judgment entry overruling its motion to join parties, and Melissa appeals the same judgment entry overruling her motion to dismiss her as a party. Finally, Appellants appeal the trial court's de facto decision overruling the motion to intervene filed by Linda Karkowski ("Linda"), as the motion was never addressed by the trial court.

{¶2} With respect to the MTA claim on appeal, Appellees concede the trial court should have continued searching the deed history after concluding that a title transaction recorded in 1996 invalidated the purported 1973 and 1974 roots of title. However, Appellees argue that a repetition of the original language from the severance deed in the 1947 deed, which Appellants argued below was their root of title, constitutes a specific reference to a recorded title transaction.

{¶3} Having reviewed the record, we find the trial court erred in terminating its MTA analysis with the 1970s deeds. We further find the 1947 deed is the root of title, and the sole repetition of the severance language, which appears in the 1947 deed but nowhere else in the Appellants' respective forty-year chains, is general, not specific.

---

[1] Surface owners have not appealed the entry of summary judgment in favor of Appellees on the DMA claim.

Accordingly, we reverse and vacate the trial court's entry of summary judgment in favor of Appellees on the MTA claim. This matter is remanded to the trial court to sustain Linda's motion to intervene and to enter a judgment quieting title in favor of Appellants consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

{¶4} Pipe Creek is the surface owner of property identified as Belmont County Parcel Nos. 15-00702.000 (59.37 acres) and 15-00703.000 (71.49 acres), located in Mead Township, Belmont County. Cory G. Miller conveyed the subject properties to Pipe Creek by quit claim deed, filed on March 12, 2014 and recorded in Book 464, Page 44 of the Belmont County Official Records.

{¶5} Melissa is the surface owner of the property identified as Belmont County Parcel No. 15-00643.000 (5.893 acres). Melissa is the daughter of Linda and Amos Karkowski. After Amos died and a certificate of transfer vested Linda with full ownership of the subject property, Linda conveyed the surface to Melissa by general warranty deed, filed on October 13, 2016 and recorded in Book 644, Page 364 of the Belmont County Official Records ("Karkowski deed").

{¶6} The Karkowski deed reads in relevant part:

**EXCEPTING AND RESERVING** unto the Grantor herein, her heirs and or assigns, where and to the extent Grantor owns and has rights thereto, all coal, oil, gas and other mineral interests in and underlying the above described premises, of whatever kind, nature or description, including, but not limited to all of the oil and gas bearing sands, strata, formations in which coal, oil, gas and other mineral interest may be, or have been found; together with the right to extract said coal, oil, gas and other mineral interests by any and all methods. This exception and reservation shall include the right to all the above minerals described after the expiration of any lease or other grant.

**EXCEPTING AND RESERVING** to the Grantor, her heirs and assigns, all payments payable under the terms of any Oil and Gas Lease presently in

Case No. 22 BE 0052

effect or hereafter executed, including but not limited to all up-front bonus consideration payments, all royalty payments, all paid-up lease rentals and all renewal rentals.

**SUBJECT** to an Oil and Gas Lease by and between Amos Karkowski and Linda Karkowski, husband and wife, and Rice Drilling D, LLC, dated August 8, 2013 and recorded in Book 416 at Page 273, Official Records of Belmont County, Ohio.

The Belmont County Auditor designated the oil and gas interest as Parcel No. 15-01535.000.

{¶7} Predecessors-in-interest, S.B. Crozier, Minnie R. Crozier, Margrate A. Myers, Nina B. Kirkland, Emma C. McKelvey, Paul Crozier, Willis Harper, Martha Harper, and Estella E. Crozier conveyed the property (then 161 acres) to Mont B. Cook and Melissa J. Cook in a warranty deed, filed for record December 18, 1935 in Volume 298, Page 460 of the Belmont County Record of Deeds ("severance deed"). The severance deed reads in relevant part, "EXCEPTED AND RESERVED, all the oil & gas rights and privileges on and underlying the above described tract of land."

{¶8} On September 18, 2017, Appellees filed the present action asserting claims for declaratory judgment and to quiet title. Appellees are the heirs of Estella E. Crozier and claim a one-seventh (1/7) interest in the oil and gas rights. Appellees also named XTO Energy, Inc., Paloma Partners III, LLC, Rice Drilling D, LLC, and Ascent Resources-Utica, LLC in the complaint, alleging that the oil and gas companies had entered into leases on the subject properties.

{¶9} On November 17, 2017, Melissa filed a motion to dismiss on the basis she is not an appropriate party. Specifically, Melissa argued she was not the owner of the oil and gas rights underlying the 5.893 acre parcel, as the mineral interest was excepted and reserved by Linda in the Karkowski Deed.

{¶10} After the matter was fully briefed, the trial court overruled the motion, reasoning "[a]s the successor in interest to the rights of Amos and Linda Karkowski, [Melissa] remains a person who may be a necessary participant so as to allow [Appellees]

full and final relief on their claims." (4/12/18 J.E.)  Melissa filed her answer on April 19, 2018.

{¶11}  On April 26, 2018, Linda filed a motion for leave to intervene pursuant to Ohio Civ. R. 24, and a motion for leave to file a third-party complaint.  The trial court never ruled on the motions, despite the fact that Appellants raised no objection.

{¶12}  On January 3, 2018, Pipe Creek filed a motion to join parties pursuant to Ohio Civ. R. 19(A) and O.R.C. 2721.12. The motion sought to join over twenty individuals or entities that have historically executed oil and gas leases on the 24.247 acres remaining from the original 161-acre parcel in the declaratory judgment action.

{¶13}  Following briefing on the matter, the trial court overruled the motion, reasoning "[t]he parties sought to be joined do not have sufficiently similar claims to those asserted by [Appellees].  [Appellees'] claims arise from and address only the mineral interest that they may hold or had held, but lost, as the result of circumstances surrounding the deaths of Paul Crozier and Estella E. Crozier and the mentioned abandonment efforts. The resolution of these claims will impact only the one-sixth [sic] interests claimed by [Appellees]." (4/12/18 J.E.)

{¶14}  On January 3, 2018, Pipe Creek filed its answer, counterclaim, and cross-claim.  The counterclaim seeks a declaratory judgment based on abandonment efforts undertaken pursuant to the 2006 DMA, to quiet title pursuant to the MTA, and slander of title.  Pipe Creek's cross-claim against XTO and Ascent, asserts claims for breach of contract relating to the oil and gas companies' failure to pay royalties due and owing, and for a judgment to declare the lease between Cory G. Miller and Paloma Partners III, LLC, to be a valid and subsisting Oil and Gas Lease. Appellees filed their Reply to Counterclaim on February 27, 2018.

{¶15}  On April 25, 2018, Pipe Creek filed a motion for leave to file a third-party complaint pursuant to Ohio Civ. R. 14.  The trial court did not rule on the motion.

{¶16}  On or about July 18, 2018, Appellees filed separate motions for summary judgment against Pipe Creek and Melissa. Melissa filed her opposition brief on August 17, 2018.

{¶17} On August 17, 2018, Pipe Creek filed its combined opposition brief to Appellees' motion for summary judgment and a motion for summary judgment against the

Appellees. Appellees' combined opposition brief and reply was filed September 10, 2018. Pipe Creek filed its reply on September 14, 2018.

{¶18} Roughly two-and-a-half years later, on February 2, 2021, Appellees filed separate supplemental motions for summary judgment as to Pipe Creek and Melissa. On March 22, 2021, Melissa filed her opposition brief, and Pipe Creek filed its opposition brief and a supplemental motion for summary judgment against Appellees. Appellees filed a combined reply and opposition brief on April 21, 2021, and Pipe Creek filed a reply on April 22, 2021. The supplemental briefing was in response to Ohio Supreme Court recently-issued precedent regarding the DMA claims.

{¶19} In the judgment entry on appeal dated September 22, 2022, the trial court found Appellees did not abandon the oil and gas rights under the DMA, nor were the oil and gas rights extinguished by operation of the MTA. In its MTA analysis, the trial court identified the following instruments as the respective "root of title" deeds:

Melissa:     General Warranty Deed from Benjamin E. Otto and Nona J. Otto, husband and wife, to Louis J. Kartman and Florence Kartman, dated May 25, 1973, filed for record June 20, 1973, and recorded in Volume 539, Page 478 of the Belmont County Deed Records.

Pipe Creek:  General Warranty Deed from Fred H. Reynolds, married, to Benjamin E. Otto and Nona J. Otto, husband and wife, dated January 11, 1974, filed for record January 18, 1974, and recorded in Volume 543, Page 923 of the Belmont County Deed Records.

{¶20} Further, the trial court identified the 1996 estate proceedings of Estella E. Crozier as a title transaction that prevents the extinguishment oil Appellees' oil and gas rights by operation of the MTA. The trial court ended its analysis at the 1973 and 1974 deeds, without regard to the potential existence of a forty-year unbroken chain of title ending prior to 1996. As a consequence, the trial court entered judgment in favor of Appellees and against Appellants for all claims stated in the complaint.

**{¶21}** On October 19, 2022, Defendant-Appellant Pipe Creek filed a Notice of Dismissal of its cross-claims against Defendants XTO Energy, Inc., and Ascent Resources-Utica, LLC.

**{¶22}** This timely appeal followed.

**ASSIGNMENT OF ERROR NO. 1**

**THE TRIAL COURT ERRED IN GRANTING [APPELLEES'] MOTIONS FOR SUMMARY JUDGMENT AND OVERRULING THE MOTION FOR SUMMARY JUDGMENT FILED BY [PIPE CREEK].**

**THE TRIAL COURT ERRED IN DETERMINING [APPELLEES' OIL AND GAS INTEREST] WAS NOT EXTINGUISHED BY OPERATION OF THE [MTA].**

**{¶23}** "Ohio's [MTA] is taken primarily from the Model Marketable Title Act." *Heifner v. Bradford*, 4 Ohio St.3d 49, 51, 446 N.E.2d 440 (1983). The MTA provides that a person who has an unbroken chain of title of record to any interest in land for at least 40 years has a "marketable record title" to that interest. R.C. 5301.48; see also *West v. Bode*, 162 Ohio St.3d 293, 2020-Ohio-5473, 165 N.E.3d 298, at ¶ 15. Marketable record title is a title of record that extinguishes interests and claims existing prior to the date of the root of title. R.C. 5301.47(A).

**{¶24}** " 'Root of title' means that conveyance or other title transaction in the chain of title of a person, purporting to create the interest claimed by such person, upon which he relies as a basis for the marketability of his title, and which was the most recent to be recorded as of a date forty years prior to the time when marketability is being determined." R.C. 5301.47(E). Thus, the root of title must precede the date when marketability is being determined by forty years and it must account for the interest claimed by the person seeking marketable record title. *Id.*; see also *Blackstone v. Moore*, 155 Ohio St.3d 448, 2018-Ohio-4959, 122 N.E.3d 132, ¶ 9.

**{¶25}** We set forth the procedure for identifying a root of title in *Senterra Ltd. v. Winland,* 7th Dist. Belmont No. 18 BE 0051, 2019-Ohio-4387, 148 N.E.3d 34, modified on reconsideration, 7th Dist. Belmont No. 18 BE 0051, 2019-Ohio-5458, aff'd, 169 Ohio

St.3d 595, 2022-Ohio-2521, 207 N.E.3d 632*, and aff'd, 169 Ohio St.3d 595, 2022-Ohio-2521, 207 N.E.3d 632. We observed:

> "Assuming the Model Act were enacted as written, an examiner inspecting title would use it as follows:  beginning with the date forty years before the date on which he is determining title and moving chronologically backwards therefrom, he would find the most recently recorded conveyance of the subject parcel. This document is his potential root of title. After giving a cursory examination of the previous title documents to determine easements, interest owned by the federal government, and reversionary, possessory interests in leases, he would closely scrutinize the documents in the chain of title for the forty years immediately following the root. Finding no competing recorded interests, he could safely assume that all interests previous to the root of title not otherwise excepted were extinguished and that the title was defect free up to the date of the root. If, however, he found competing claims in the chain, he would go back to the next closest preceding conveyance and repeat the process. He would continue moving back until he found a conveyance followed by forty years of clean title. That document would be his root, and he could safely conclude that the act extinguished all competing interests recorded prior to that date."

*Id.* at ¶ 57, quoting Hubbert*, Rocked by Rocket: Applying Oklahoma's MRTA to Severed Mineral Interests after Rocket v. Donabar*, 68 Okla.L.Rev. 381, 386 (2016).

**{¶26}** Further, "[a]n interest that has been extinguished by operation of the [MTA] cannot be revived." *West* at ¶ 15, citing R.C. 5301.49(D). The only exception to that rule is if there was a saving event that appears in the record chain of title – "i.e., the interest was specifically identified in the muniments of title in a subsequent title transaction, the holder recorded a notice claiming the interest, or the interest '[arose] out of a title transaction which has been recorded subsequent to the effective date of the root of title.'" (Brackets added in *Corban.*) *Corban v. Chesapeake Exploration, L.L.C.*, 149 Ohio St.3d 512, 2016-Ohio-5796, 76 N.E.3d 1089, at ¶ 18, quoting R.C. 5301.49(D).

**{¶27}** Whether a reference is general or specific was first addressed in *Blackstone v. Moore*, 2017-Ohio-5704, 94 N.E.3d 108 (7th Dist.), aff'd, 155 Ohio St.3d 448, 2018-Ohio-4959, 122 N.E.3d 132. In *Blackstone*, we held that a conveyance need not include the volume and page number of the reference in order to be specific.

**{¶28}** On appeal, the Ohio Supreme Court agreed and created a three-step inquiry: "(1) Is there an interest described within the chain of title? (2) If so, is the reference to that interest a 'general reference'? (3) If the answers to the first two questions are yes, does the general reference contain a specific identification of a recorded title transaction?" *Blackstone v. Moore*, 155 Ohio St.3d 448, 2018-Ohio-4959, 122 N.E.3d 132, ¶ 12. The *Blackstone* Court also provided the following definitions of general and specific references:

> Because the term "general reference" is not defined in the act, courts look to the ordinary meaning of the term. *Stewart v. Vivian*, 151 Ohio St.3d 574, 2017-Ohio-7526, 91 N.E.3d 716, ¶ 26. "General" is defined as "marked by broad overall character without being limited, modified, or checked by narrow precise considerations: concerned with main elements, major matters rather than limited details, or universals rather than particulars: approximate rather than strictly accurate." *Webster's Third New International Dictionary* 944 (2002).

> Our caselaw distinguishes between a general reference and a specific reference: if a reference is specific, it is not a general reference. See *Toth* [*v. Berks Title Ins. Co.*,] 6 Ohio St.3d at 341, 453 N.E.2d 639 [1983]. "Specific" is defined as "characterized by precise formulation or accurate restriction (as in stating, describing, defining, reserving): free from such ambiguity as results from careless lack of precision or from omission of pertinent matter." *Webster's Third New International Dictionary* at 2187.

*Id.* at ¶ 13-14. We previously opined "the question of whether a reference is general or specific can only be answered by means of a fact driven analysis." *Cattrell Family*

*Woodlands, LLC v. Baruffi*, 7th Dist. Jefferson No. 20 JE 0023, 2021-Ohio-4660, 184 N.E.3d 186, ¶ 28.

**{¶29}** Relevant to the current appeal, in *Erickson v. Morrison,* 165 Ohio St.3d 76, 2021-Ohio-746, 176 N.E.3d 116, ¶ 16, the severance deed read in pertinent part: "Excepting and reserving therefrom all coal, gas and oil with the right of said first parties, their heirs and assigns, at any time to drill and operate for oil and gas and mine all coal." *Id.* at ¶ 5. Unique to the facts in *Erickson*, each subsequent transfer in the chain of title, including the root of title deed, included the reservation word for word, with the exception of four deeds that omitted the word "said" before "first parties." *Id.* at ¶ 6. The trial court sustained a motion on the pleadings in favor of the surface owners. The Fifth District disagreed, concluding instead the chain of title did not include a specific reference to the original reservation.

**{¶30}** The Ohio Supreme Court reversed the Fifth District, holding the root of title deed specifically referenced the original reservation. *Id.* at ¶ 32. The Court held that "the transfer of the surface rights does not contain vague, boilerplate language excepting any reservations that may – or may not – exist." The Court opined the Morrisons' "root of title and subsequent conveyances were made subject to a specific, identifiable reservation of mineral rights recited throughout their chain of title using the same language as the recorded title transaction that created it." *Id.* at ¶ 32.

**{¶31}** The Court reiterated its definition of "boilerplate language" from *Blackstone*, that is, "common conveyancing practice for draftsmen to include in the deed description some such language as 'subject to easements and use restrictions of record.' " *Id.* at ¶ 30, citing Smith, *The New Marketable Title Act*, 22 Ohio St.L.J. 712, 717 (1961). In essence, boilerplate language "leaves it unclear whether a prior interest in fact exists." *Id.* at ¶ 30.

**{¶32}** After *Erickson*, we released our opinion in *O'Kelley v. Rothenbuhler*, 2021-Ohio-1167, 171 N.E.3d 775 (7th Dist.). In *O'Kelley*, the severance deed reserved:

> All oil, gas and minerals (including coal) of whatsoever kinds with full right
> to develop same and to operate on said premises therefore with the
> incidental rights and privileges necessary to such development and

operation including among other things the right to locate and drill thereon and therein oil wells and gas wells to lay pipes to and from said wells * * *

*Id.* at ¶ 8.

**{¶33}** The root of title deed provided the following reference:

Being the south east quarter of Section Nineteen (19), Township four (4) and of Range four (4) containing 160 acres more or less. Except 20 acres thereof conveyed by Mary B. [sic] Zonker to Joseph C. Rothenbuhler and also excepting the oil and gas minerals including coal underlying the same heretofore conveyed.

*Id.* at ¶ 15.

**{¶34}** On appeal, we held the root of title's repetition of the original reservation did not amount to a specific reference for purposes of R.C. 5301.49(A). We explained the root of title deed omitted language from the original reservation that described the parties' rights to the mineral interest. *Id.* at ¶ 46. Second, we noted the parties disputed whether language in the root of title deed stating "heretofore conveyed" modified the phrase "the oil and gas minerals including coal" or "the same." However, we held that the dispute need not be resolved, as the very fact the reference was subject to multiple interpretations amounted to further evidence that the reference was general and not specific. Third, we held that the "reference sounds to the reader like vague, boilerplate language excepting reservations that may or may not exist, rather than a specific, identifiable reservation of mineral rights using the same language that created it." *Id.* at ¶ 48.

**{¶35}** We revisited the law applied in *O'Kelley* in *Cattrell*, *supra*. The root of title deed in *Cattrell* added the language "bore and remove the same, more or less." The root of title deed also omitted language stating "all the privileges and appurtenances to the same belonging, and all the rents, issues and profits thereof." The root of title futher omitted a line reading: "with the right to mine, have and reserve the same and all timber over seven and one-fourth inches in diameter and Interest of the said William Cox a single person either in Law or Equity, of, in and to the said premises." The *Cattrell* panel opined

Case No. 22 BE 0052

that, although a name is not required in order for a reference to be specific, Cox's name was present in the original reservation but was specifically omitted from the root of title deed.

{¶36} Based on the factors analyzed in *Erickson* and *O'Kelley*, we found the root of title deed in *Cattrell* did not contain a specific reference to the original reservation for purposes of R.C. 5301.49(A). Instead, we opined the reference contained vague, boilerplate language that omits and adds phrases to the original reservation and has not been consistently noted within the chain of title.

{¶37} In this appeal, Appellees concede the trial court erred in failing to continue back in the deed history to the 1947 warranty deed conveying the subject property from Melissa J. Cook to Fred H. Reynolds. The 1947 deed reads, in relevant part:

> Excepting and reserving all the oil and gas rights and privileges on and underlying the above described tract of land.

{¶38} Appellees argue that the root of title deed contains a restatement of the original reservation – "EXCEPTED AND RESERVED, all the oil & gas rights and privileges on and underlying the above described tract of land," Appellees contend that that the reference is specific rather than general.

{¶39} First, it is important to note that the repetition in the 1947 deed does not appear in any other deed through 1987 in either chain of title. Consequently, the *Erickson* Court's conclusion that the essentially verbatim recitation of the original severance deed language in the root of title and through the relevant deed history is not applicable here.

{¶40} Turning to the three-step *Blackstone* inquiry, we find there is an interest described within the root of title. Next, we find that the reference in the root of title is a general reference. Although the repetition is not verbatim, the only difference is the change of tense – from "excepted and reserved" to "excepting and reserving." Consequently, we conclude that the slight modification to the language does not affect the repetition.

{¶41} Nonetheless, we find that the repetition is vague, as it is subject to two interpretations. The repetition can be read as an original reservation or as a reference to a prior reference. As a consequence, we find that the repetition constitutes a general

reference, as it "leaves it unclear whether a prior interest in fact exists." *Id.* at ¶ 30. Finally, we conclude the general reference in the root of title does not contain a specific identification of a recorded title transaction.

**{¶42}** For the foregoing reasons, we find that the first assignment of error has merit, and we reverse and vacate the judgment entry on appeal to the extent that it enters judgment in favor of Appellees on the MTA claim.

## ASSIGNMENT OF ERROR NO. 2

**THE TRIAL COURT ERRED IN DENYING [MELISSA'S] MOTION TO DISMISS.**

**{¶43}** A motion to dismiss for failure to state a claim under Civ.R. 12(B)(6) tests the sufficiency of the complaint. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548, 605 N.E.2d 378 (1992). A court may grant a motion to dismiss only when the complaint, when construed in the light most favorable to the plaintiff and presuming all the factual allegations in the complaint are true, demonstrates that the plaintiff can prove no set of facts entitling him to relief. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988).

**{¶44}** An appellate court reviews a ruling on a Civ.R. 12(B)(6) motion under a de novo standard of review. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5. In reviewing whether a motion to dismiss should be granted, the reviewing court accepts as true all factual allegations in the complaint. *Mitchell* at 192.

**{¶45}** Melissa predicated her motion to dismiss on the oil and gas rights reservation by Linda in the Karkowski deed. However, Linda could not reserve the oil and gas rights in the Karkowski deed if they were not conveyed to her in the warranty deed from Florence Kartman to Amos and Linda Karkowski, filed for record July 31, 1987 in Volume 642, Page 462 of the Belmont County Deed Records. Insofar as the complaint in this matter alleged that Appellees were the rightful owners of the oil and gas rights underlying the subject properties, we find the trial court did not err in overruling Melissa's motion to dismiss.

## ASSIGNMENT OF ERROR NO. 3

**THE TRIAL COURT ERRED IN FAILING TO GRANT [LINDA'S] MOTION TO INTERVENE.**

{¶46} The standard of review of a trial court's decision on a motion to intervene is abuse of discretion. *State ex rel. Merrill v. ODNR*, 130 Ohio St.3d 30, 2011-Ohio-4612, 955 N.E.2d 935, ¶ 41, citing *State ex rel. First New Shiloh Baptist Church v. Meagher*, 82 Ohio St.3d 501, 503, 696 N.E.2d 1058 (1998), fn. 1. Although Civ.R. 24 should be construed liberally in favor of granting intervention, we cannot reverse unless the trial court's decision was unreasonable, arbitrary, or unconscionable. *Yemma v. Reed*, 2017-Ohio-1015, 86 N.E.3d 980, ¶ 25 (7th Dist.), citing *Merrill* at ¶ 41 and *First New Shiloh Baptist Church* at 503.

{¶47} Linda sought intervention as a matter of right. Civ.R. 24(A) provides as follows:

> Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of this state confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

{¶48} A motion to intervene as of right has four elements. First, it must be timely. Second, the applicant must have an interest in the property or transaction that is the subject of the action. Third, disposition of the action may impair or impede the applicant's ability to protect that interest. Fourth, the applicant's interest is not adequately represented by existing parties. *Pabin v. Eberle*, 7th Dist. Monroe No. 18 MO 0008, 2019-Ohio-2728, ¶ 33.

{¶49} We find that Linda's motion was timely, she had a purported interest in the oil and gas rights depending upon the resolution of the merits of the case, a determination on the merits might impair her ability to protect her purported interest, and her rights are

not adequately represented by the parties. Accordingly, we find the third assignment of error has merit, as the trial court abused its discretion in overruling Linda's motion to intervene.

## ASSIGNMENT OF ERROR NO. 4

**THE TRIAL COURT ERRED IN DENYING [PIPE CREEK'S] MOTION TO JOIN PARTIES.**

**{¶50}** Pipe Creek contends the trial court abused its discretion in overruling Pipe Creek's motion to join purported lessors and lessees of the remaining 6/7ths of the 161-acre property subject to the original severance language. Appellees argue that a judgment regarding 1/7th of the property has no impact on the remaining 6/7ths insofar as the properties are subject to distinct chains of title.

**{¶51}** Civ.R. 19(A) governs permissive joinder of a party if feasible and reads in its entirety:

Persons to be joined if feasible. A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (a) as a practical matter impair or impede his ability to protect that interest or (b) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest, or (3) he has an interest relating to the subject of the action as an assignor, assignee, subrogor, or subrogee. If he has not been so joined, the court shall order that he be made a party upon timely assertion of the defense of failure to join a party as provided in Rule 12(B)(7). If the defense is not timely asserted, waiver is applicable as provided in Rule 12(G) and (H). If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. In the event that such joinder

causes the relief sought to exceed the jurisdiction of the court, the court shall certify the proceedings in the action to the court of common pleas.

Further, Civ. R. 21 reads in pertinent part, "* * * Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately."

**{¶52}** A trial court's decision regarding a question of permissive joinder is reviewed for abuse of discretion. *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 184, 465 N.E.2d 1298 (1984). Similarly, a trial court's ruling on whether a party should be added or removed from litigation under Civ.R. 21 is also reviewed for abuse of discretion. *Darby v. A–Best Prod. Co.*, 102 Ohio St.3d 410, 2004-Ohio-3720, 811 N.E.2d 1117, paragraph one of the syllabus.

**{¶53}** We find that individuals with a purported interest in the remaining 6/7 of the original undivided property would not be impacted by the trial court's resolution of this case. The DMA and MTA claims addressed 1/7th of the original property. Although a complete chain of title was not provided by the parties, it does not appear extinguishment of the entire mineral and gas interest was possible as the property was subdivided prior to the statutorily-required 40-year period. The severance deed was recorded in 1937 and the root of title relevant to this appeal was recorded in 1947. Following the root of title, the chain of title separated with the subdivision of the property. Accordingly, we find that the trial court did not err in overruling Pipe Creek's motion to join parties.

**{¶54}** Finally, Pipe Creek requests that its slander of title claim be remanded to the trial court. In the slander of title claim, Pipe Creek asserts "[b]y recording the fraudulent and false Potomac leases, in contravention of the express terms of the Affidavit of Abandonment * * * and the provisions of the [DMA and MTA], [Appellees] are exhibiting reckless disregard in creating a cloud of title on [Pipe Creek's] title. (Pipe Creek Complt., ¶ 62.) As we find the proper remedy in this case is remand for the entry of an order quieting title in favor of Appellants, the trial court can address the recordation of the Potomac leases in the order quieting title.

Case No. 22 BE 0052

## CONCLUSION

**{¶55}** For the foregoing reasons, we find the trial court erred in terminating its MTA analysis with the 1970s deeds. We further find the 1947 deed is the root of title, and the sole repetition of the severance language, which appears in the 1947 deed but nowhere else in Appellants' respective forty-year chains, is general, not specific. Accordingly, we reverse and vacate the trial court's entry of summary judgment in favor of Appellees on the MTA claim. Further, this matter is remanded to the trial court to sustain Linda's motion to intervene and to enter a judgment quieting title in favor of Appellants consistent with this opinion.

Waite, J., concurs.

Hanni, J., concurs.

<hr>

For the reasons stated in the Opinion rendered herein, we reverse and vacate the judgment of the Court of Common Pleas of Belmont County, Ohio, entering summary judgment in favor of Appellees on the MTA claim.  We hereby remand this matter to the trial court to sustain Linda's motion to intervene and to enter a judgment quieting title in favor of Appellants consistent with this Court's Opinion.  Costs to be taxed against the Appellees.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure.  It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**