[Cite as *Whitney v. Baker*, 2026-Ohio-1035.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MONROE COUNTY

JENNIFER L. WHITNEY, SUCCESSOR TRUSTEE OF THE GEORGE WILLIAM AKA "DUKE" LANDIS REVOCABLE TRUST DATED OCTOBER 10, 1994,

Plaintiff-Appellant,

v.

RUSSIE ANN BAKER, et al.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 25 MO 0006**

---

Civil Appeal from the
Court of Common Pleas of Monroe County, Ohio
Case No. 2024-169

**BEFORE:**
Cheryl L. Waite, Carol Ann Robb, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Reversed and Remanded.

---

*Atty. Sara E. Fanning* and *Atty. Timothy B. Pettorini*, Roetzel & Andress, LPA, for Plaintiff-Appellant

*Atty. Paul N. Garinger* and *Atty. Kristopher J. Armstrong*, Barnes & Thornburg LLP, for Defendant-Appellee SWN Production Company, LLC

*Atty. Thomas D. White* and *Atty. Austin T. Warehime*, Eques, Inc., for Defendants-Appellees Russie Ann Baker, Tonia Baker, and Ethan Baker

Dated:  March 25, 2026

_____

**WAITE, P.J.**

{¶1} In this oil and gas action, Appellant Jennifer L. Whitney, Successor Trustee of the George William aka "Duke" Landis Revocable Trust Dated October 10, 1994 ("Appellant") appeals a September 24, 2025 judgment entry of the Monroe County Court of Common Pleas granting summary judgment in favor of Appellees Russie Ann Baker et al.  Appellant sought a determination of ownership under both the Ohio Marketable Title Act ("MTA") and the Ohio Dormant Mineral Act ("DMA").  The trial court determined that the mineral interest at issue had been extinguished by the MTA, thus implicitly finding that a DMA analysis was unnecessary.  In the alternative, Appellant also advanced a third-party beneficiary argument.  On appeal, Appellant contends she was entitled to judgment under both an MTA and DMA analysis.  Following review, the record shows that Appellant's MTA argument has merit.  The root of title deed and every deed within the chain of title contains a specific reference to the claimed interest, as they contain a near verbatim recitation of the original reservation and also contain a citation to the volume and page number of the severance deed.  Further, Appellees have conceded judgment in favor of Appellant pursuant to the DMA.  This matter is remanded with instructions to grant summary judgment in favor of Appellant as to the MTA and DMA issues, and remanded for purposes of determining payment of the royalties owed Appellant.

<u>Factual and Procedural History</u>

*Severance Deed*

**{¶2}** This matter involves approximately forty acres of land located in Adams Township, Monroe County. On January 21, 1964, Clarence L. and Marie E. Boughnor conveyed the property to Russell L. and Bonnie L. Vaness. Within the deed, the Boughnors reserved a one-half interest in the royalties ("the Boughnor Interest"). The language reserving this interest is as follows: "[e]xcepting and reserving unto the Grantors, their heirs and assigns, one-half of the royalty in the oil and gas underlying said premises." (2/7/64 Deed). The deed was recorded on February 7, 1964, volume 144 and page 86.

*Surface History*

**{¶3}** On January 22, 1968, Bonnie Vaness conveyed her interest to Russell Vaness during divorce proceedings. The deed was recorded on April 11, 1974. The deed referenced the Boughnor Interest using near verbatim language.

**{¶4}** On August 20, 1979, Russell conveyed his interest to Robert LeRoy and Russie Ann Baker. The deed was recorded on August 23, 1979. The deed contained the same near verbatim reference to the Boughnor Interest, specifically stating: "[e]xcepting and reserving unto the former Grantors, their heirs and assigns, one-half royalty in the oil and gas underlying said premises." Within the deed, Russell also reserved a life estate but he died later that same year.

**{¶5}** On April 19, 2004, Robert and Russie Ann Baker conveyed their interests to the "Baker defendants." The Baker defendants include: Russie Ann Baker, Tonia A. Baker, and Ethan L. Baker. The 2004 deed includes a reference to the Boughnor Interest,

"excepting and reserving unto former Grantors, their heirs and assigns, one-half of the royalty in the oil and gas underlying said premises."

*Boughnor Interest History*

{¶6}   On November 29, 1980, Marie Boughnor died testate.  Her will was filed and probated in Stark County.  The residuary clause left the remainder of her assets, including the Boughnor Interest, to her husband, Clarence L. Boughnor.

{¶7}   On May 18, 1987, Clarence died testate.  His will was filed and probated in Stark County.  The residuary clause left the remainder of his assets, including the Boughnor Interest, to Faye B. Hissong, Eva Hendershot, and Dale C. Boughnor.

{¶8}   On August 30, 1999, Faye Hissong died testate.  Her will was filed and probated in Stark County.  The residuary clause left the remainder of her assets, including the Boughnor Interest, to George W. Landis, aka "Duke."

{¶9}   On December 23, 2015, George "Duke" Landis died testate.  His will was filed and probated in Stark County.  The residuary clause left the remainder of his assets to "the Trustee of the George William AKA "Duke" Landis Revocable Trust dated October 10, 1994."  Appellant Jennifer L. Whitney is the successor trustee for the trust.

*Baker Defendants DMA Attempt*

{¶10} On October 4, 2023, the "Baker defendants" (earlier named) published notice of their intent to declare the Boughnor Interest abandoned.  Despite the fact that Marie and Charles Boughnor's mailing address in Stark County was listed on the deed, the Baker defendants published their notice only in the Monroe County Beacon and admittedly did not conduct any search for persons having any claim to the Boughnor Interest in Stark County.

**{¶11}** On November 14, 2023, the Baker defendants filed an affidavit of abandonment and requested that the deed reflect abandonment of the claim to the mineral rights, even though the search for interested parties was defective.

**{¶12}** On December 8, 2023, the Baker defendants entered into an oil and gas lease with Eclipse Resources (now known as SWN Production Company, LLC). Eclipse pooled the acreage, drilled, and began producing oil and gas. Royalties have been paid to the Baker defendants.

*Legal Proceedings*

**{¶13}** On June 24, 2024, Appellant filed a complaint against the Baker defendants and SWN asserting four claims for relief: (1) declaratory judgment pursuant to the MTA, (2) declaratory judgment pursuant to the DMA, (3) quiet title, (4) alternative theories regarding rights to royalties.

**{¶14}** On June 20, 2025, both Appellant and Appellees filed competing motions for summary judgment. While Appellant raised and discussed the issue of the DMA, Appellees did not.

**{¶15}** On September 24, 2025, the trial court granted summary judgment in favor of Appellees pursuant to the MTA.

<u>Summary Judgment</u>

**{¶16}** An appellate court conducts a *de novo* review of a trial court's decision to grant summary judgment, using the same standards as the trial court set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co*., 77 Ohio St.3d 102, 105 (1996). Before summary judgment can be granted, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a

<u>Case No. 25 MO 0006</u>

matter of law, (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). Whether a fact is "material" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603 (8th Dist. 1995).

{¶17} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis deleted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 296 (1996). If the moving party carries its burden, the nonmoving party has a reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. *Id*. at 293. In other words, when presented with a properly supported motion for summary judgment, the nonmoving party must produce some evidence to suggest that a reasonable factfinder could rule in that party's favor. *Brewer v. Cleveland Bd. of Edn*., 122 Ohio App.3d 378, 386 (8th Dist. 1997).

{¶18} The evidentiary materials to support a motion for summary judgment are listed in Civ.R. 56(C) and include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact that have been filed in the case. In resolving the motion, the court views the evidence in a light most favorable to the nonmoving party. *Temple* at 327.

<u>ASSIGNMENT OF ERROR</u>

THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT GRANTED SUMMARY JUDGMENT IN APPELLEES' FAVOR AND DENIED SUMMARY JUDGMENT TO APPELLANT.

**{¶19}** While Appellant raises a single assignment of error, she presents arguments that fall under three different legal theories, the MTA, DMA, and the recovery of royalties owed. Appellant's arguments as to these different theories will be separately addressed.

*MTA*

**{¶20}** The MTA was enacted in 1961 "to extinguish interests and claims in land that existed prior to the root of title, with 'the legislative purpose of simplifying and facilitating land title transactions by allowing persons to rely on a record chain of title.' " *Corban v. Chesapeake Exploration, L.L.C.,* 2016-Ohio-5796, ¶ 17, quoting R.C. 5301.55; see also *Cattrell Family Woodlands, LLC v. Baruffi*, 2021-Ohio-4660, ¶ 12 (7th Dist.). In theory, the process of establishing a reliable chain of title is simplified by requiring proof of record title going back only 40 years, rather than requiring proof through the entire chain of title that may span two hundred years or more. *Id.*

**{¶21}** Pursuant to the MTA, a person who has an unbroken chain of record title to any interest in land for at least 40 years has a "marketable record title" to the claimed interest. R.C. 5301.48. A marketable record title "operates to extinguish" stale interests and claims that existed prior to the effective date of the root of title. R.C. 5301.47(A); *Erickson v. Morrison*, 2021-Ohio-746, ¶ 16. Prior interests beyond the 40-year period

established by the MTA are "null and void."  R.C. 5301.50.  An interest that has been extinguished by the 40-year limitations period cannot be revived.  R.C. 5301.49(D).

{¶22}  There are three methods for preserving a prior interest in the marketable chain of title pursuant to the MTA:  (1) the preexisting interest is specifically identified in the muniments that form the record chain of title; (2) the holder of the preexisting interest has recorded a notice claiming the interest, in accordance with R.C. 5301.51; or (3) the preexisting interest arose out of a title transaction that was recorded subsequent to the effective date of the root of title.  *West v. Bode*, 2020-Ohio-5473, ¶ 16.

{¶23}  A critical term in any MTA analysis is "root of title."  This is defined in R.C. 5301.47(E):

> "Root of title" means that conveyance or other title transaction in the chain of title of a person, purporting to create the interest claimed by such person, upon which he relies as a basis for the marketability of his title, and which was the most recent to be recorded as of a date forty years prior to the time when marketability is being determined.

{¶24}  R.C. 5301.49 sets out exceptions that "serve as a shield" to protect certain property interests from the extinguishing effect of the MTA.  *Spring Lakes, Ltd. v. O.F.M. Co.*, 12 Ohio St.3d 333, 335 (1984).  These exceptions are referred to as "saving events." *Corban* at ¶ 18.  R.C. 5301.49(A) provides, in pertinent part:

> Such record marketable title shall be subject to:

(A) All interests and defects which are inherent in the muniments of which such chain of record title is formed; provided that a general reference in such muniments, or any of them, to easements, use restrictions, or other interests created prior to the root of title shall not be sufficient to preserve them, unless specific identification be made therein of a recorded title transaction which creates such easement, use restriction, or other interest . . .

{¶25} The parties in this matter agree that the August 20, 1979, Vaness to Baker deed is the root of title deed at issue in this case. The sole issue is whether or not that deed contains a specific reference to the Boughnor Interest. Appellant cites to language within that deed stating "[e]xcepting and reserving unto the former Grantors, their heirs and assigns, one-half the royalty in the oil and gas underlying said premises." (8/20/1979 Deed). In addition to this language, Appellant notes that a few lines down, the deed states "REFERENCE: Volume 144, Page 86, Monroe County Deed Records[,]" which refers to the Boughnor Deed, the deed that created the Boughnor Interest. (8/20/1979 Deed). Together, Appellant contends that this language in the deed contains a specific reference to the Boughnor Interest. It serves as a guide to allow a searcher to locate the prior reservation due to its specific and identifiable language.

{¶26} As regards the MTA, the law begins by looking at the language of the relevant deeds. "The statute presents a three-step inquiry: (1) Is there an interest described within the chain of title? (2) If so, is the reference to that interest a 'general reference'? (3) If the answers to the first two questions are yes, does the general

reference contain a specific identification of a recorded title transaction?" *Blackstone v. Moore*, 2018-Ohio-4959, ¶ 12.

**{¶27}** The *Blackstone* Court provided some definition of general and specific reservations, although these definitions do little to help with the actual determination in practice as to whether the reference is general or specific:

> Because the term "general reference" is not defined in the act, we look to the ordinary meaning of the term. *Stewart v. Vivian*, 151 Ohio St.3d 574, 2017-Ohio-7526, 91 N.E.3d 716, ¶ 26. "General" is defined as "marked by broad overall character without being limited, modified, or checked by narrow precise considerations: concerned with main elements, major matters rather than limited details, or universals rather than particulars: approximate rather than strictly accurate." *Webster's Third New International Dictionary* 944 (2002).

> Our caselaw distinguishes between a general reference and a specific reference: if a reference is specific, it is not a general reference. See *Toth*, 6 Ohio St.3d at 341, 453 N.E.2d 639. "Specific" is defined as "characterized by precise formulation or accurate restriction (as in stating, describing, defining, reserving): free from such ambiguity as results from careless lack of precision or from omission of pertinent matter." *Webster's Third New International Dictionary* at 2187.

*Blackstone* at ¶ 13-14.

Case No. 25 MO 0006

**{¶28}** In applying the first prong of *Blackstone* in this case*,* the language we must look to determine if the reference is general or specific is "[e]xcepting and reserving unto the former Grantors, their heirs and assigns, one-half the royalty in the oil and gas underlying said premises." (8/20/1979 Deed). As the deed includes a reference, we move to the second *Blackstone* prong to determine whether that reference is general or specific.

**{¶29}** Appellant raises two arguments pertaining to the second prong. First, she contends that the use of the phrase "former Grantors" alerts the searcher to a prior reservation and cannot be interpreted as the creation of a new reservation. Second, Appellant argues that the reference is nearly verbatim to, and without any significant deviation from, the language of the original reservation, thus the reference is specific pursuant to *Blackstone*.

**{¶30}** Here, the original severance deed stated: "[e]xcepting and reserving unto the Grantors, their heirs and assigns, one-half of the royalty in the oil and gas underlying said premises." The root of title repetition stated: "[e]xcepting and reserving unto the former Grantors, their heirs and assigns, one-half the royalty in the oil and gas underlying said premises." This same language is contained in the only other deed within the chain of title. The only very minor deviations are the inclusion of the word "former" and omission of the word "of" prior to "the royalty."

**{¶31}** Based on the established caselaw arising from this district and the Ohio Supreme Court, these minor deviations from the original language in the severance deed and the reference within the root of title deed are inconsequential. Because the language changes are very minor and actually assist in clarifying the interest in this case, it is

apparent the reference to the interest is specific. Even if it were not, the later deed contains a citation to the volume and page number in close proximity to this reference that could serve no other purpose than to guide the researcher to the severance deed.

**{¶32}** In reaching this conclusion, we first turn to the Supreme Court's Opinion in a case arising out of this district, *Erickson v. Morrison,* 2021-Ohio-746. The reference at issue in *Erickson* stated "EXCEPTING AND RESERVING THEREFROM all coal, gas and oil with the right of said first parties, their heirs and assigns, at any time to drill and operate for oil and gas and mine all coal." *Id.* at ¶ 7. This same reference was recited in all deeds within the chain of title, except for the omission of the word "said" in four of the deeds.

**{¶33}** The *Erickson* Court determined that the name of the reserving party need not be included in order for the reference to be deemed specific. The Court specifically held that "a recitation of a preexisting interest in a recorded title transaction is not a general reference that is insufficient to preserve the interest under the Marketable Title Act simply because it does not name the owner." *Id.* at ¶ 31. The Court explained that the reference in that case was specific because it was a near verbatim recitation; the fact that a minor deviation in the language omitted the word "said" in the root of title deed was inconsequential and did not affect its analysis. The Court concluded:

> "[R]oot of title" and subsequent conveyances are made subject to a specific, identifiable reservation of mineral rights recited throughout their chain of title using the same language as the recorded title transaction that created it. The reference to the reservation is therefore not a general reference, and there is no need to reach the third question articulated by

Case No. 25 MO 0006

this court in *Blackstone* at ¶ 12, i.e., whether a general reference specifically identifies the relevant recorded title transaction.

*Id.* at ¶ 32.

{¶34} Hence, under Ohio law, where a reference to a prior reservation uses the same language as the original reservation, it is a specific reference under *Blackstone* even if the names of the original parties are absent. Further, deviations in that language are acceptable so long as any deviations are minor and do not affect the essential aspects of the reservation, such as the interest being reserved.

{¶35} Shortly after *Erickson* was released, we addressed the issue in *O'Kelley v. Rothenbuhler,* 2021-Ohio-1167 (7th Dist.). The original reservation in *O'Kelley* provided:

> All oil, gas and minerals (including coal) of whatsoever kinds with full right to develop same and to operate on said premises therefore with the incidental rights and privileges necessary to such development and operation including among other things the right to locate and drill thereon and therein oil wells and gas wells to lay pipes to and from said wells . . .

*Id.* at ¶ 8.

{¶36} The root of title deed at issue in *O'Kelley* included language purporting to reference the prior reservation:

> Being the south east quarter of Section Nineteen (19), Township four (4) and of Range four (4) containing 160 acres more or less. Except 20 acres thereof conveyed by Mary B. [sic] Zonker to Joseph C. Rothenbuhler

and also excepting the oil and gas minerals including coal underlying the same heretofore conveyed.

*Id.* at ¶ 15.

**{¶37}** On appeal, we held that the reference was general for several reasons. First, the reference was not a verbatim repetition of the original and omitted essential language. The original reservation reserved "*all* oil and gas minerals (including coal) of whatsoever kinds," whereas the reference listed only "the oil and gas minerals including coal." (Emphasis added.) *Id.* at ¶ 45. We found the word "all" was significant, as a prior reservation could have reserved less than "all" of the interests. Second, we determined that the reference omitted all of the language from the reserving deed that detailed the rights of the reserving party, including the "full right to develop . . . including among other things the right to locate and drill . . .to lay pipes and form said wells". This language was significant, because all of the rights, not just the rights to any royalties, had been reserved. *Id.* at ¶ 46. Finally, we found the phrase "heretofore conveyed" to be susceptible to more than one meaning. *Id.* at ¶ 47.

**{¶38}** Importantly, *O'Kelley* does not change the law set out in *Erickson*. Instead, it provides an example of a case in which important language detailing the interest reserved was not repeated in a verbatim manner and cannot be said to reflect a specific interest, in contrast to *Erickson*, where the deviations in language were clearly inconsequential. Both cases contained certain variances from the original language of the references, but in one the deviations were insignificant, whereas in the other there were important details that were changed.

Case No. 25 MO 0006

**{¶39}** In the later *Cattrell Family Woodlands LLC v. Baruffi,* 2021-Ohio-4660 (7th Dist.), the original reservation stated:

> [E]xcepting and reserving therefrom all coal underlying said tracts, and one half of all oil and gas with the right to mine, have and reserve the same and all timber over seven and one-fourth inches in diameter and Interest of the said William Cox a single person, either in Law or Equity, of, in and to the said premises; Together with all the privileges and appurtenances to the same belonging, and all the rents, issues, and profits thereof[.]

*Id.* at ¶ 2.

**{¶40}** The root of title deed in that case contained the reservation but with different language: "[e]xcepting and reserving all the coal underlying said tracts, and one half of all oil and gas with right to mine, bore and remove the same, more or less, but subject to all legal highways." *Id.* at ¶ 23.

**{¶41}** On appeal, we found the reservation had not been sufficiently set out or repeated to constitute a specific reservation. In so doing, we declined to establish a bright-line rule, noting that "[u]ltimately, the question of whether a reference is general or specific can only be answered by means of a fact driven analysis." *Id.* at ¶ 28. However, we recited the factors which must be considered.

**{¶42}** First, a court must consider "whether 'the transfer of the surface rights [* * *] contain vague, boilerplate language excepting any reservations that may-or may not-

exist.' *Erickson* at ¶ 32. Again, the crux of this factor is whether the reservation leaves it unclear whether a prior interest, in fact, exists." *Cattrell* ¶ 29.

**{¶43}** Second, it must be determined "whether the root of title contained the same language as the original reservation." *Cattrell* at ¶ 31. We cautioned that, as stated in the earlier caselaw, some minor deviation from the exact language of the reservation is permissible where the critical aspects of that reservation are unaffected. *See Erickson.*

**{¶44}** After completing the analysis, we found the reservation in *Cattrell* was general. Of note, we emphasized that the repetition within the root of title deed omitted certain critical language of the original reservation and the reference had been omitted from seven deeds in the chain of title. *Id.* at ¶ 34.

**{¶45}** We addressed the issue again in *Crozier v. Pipe Creek Conservancy LLC,* 2023-Ohio-4297 (7th Dist.). The reference within the *Crozier* root of title deed stated "EXCEPTED AND RESERVED, all the oil & gas rights and privileges on and underlying the above described tract of land[.]" *Id.* at ¶ 38. The difference between this reference and the original reservation included a change from the phrase "excepting and reserving" to "excepted and reserved." *Id.* at ¶ 40. However, our determination that *Erickson* did not apply was due to the fact that the reservation had not been recited in all deeds within the chain of title. In fact, it did not appear in any of those deeds. *Id.* at ¶ 39. Hence, the interests were lost because the reservation had not been repeated throughout the chain of title. There is no *Crozier* issue in the case at issue, here, as the reservation in the instant case appeared within every deed in the chain of title.

**{¶46}** A month after *Crozier* was released, we decided *Kemp v. Rice Drilling,* 2023-Ohio-4732 (7th Dist.). In *Kemp,* the severance deed stated: "[t]he said Grantors

hereby reserve the one half interest in all oil and gas underlying said premises." *Id.* at ¶ 4. The root of title deed referenced the reservation by means of the following language: "ALSO RESERVING one-half of the oil and gas royalty as heretofore reserved." *Id.* at ¶ 6. First, we noted that the reservation had been inconsistently described throughout the chain of title. *Id.* at ¶ 8. Second, we found that the language was inconsistent. The reference in the root of title deed used the word "royalty," which was not used in the original reservation. Thus, the reference to the original interest was not verbatim in its essential terms. *Id.* at ¶ 28.

{¶47} In *RL Clark v. Hammond,* 2024-Ohio-5051 (7th Dist.), the severance deed generally provided that it was "excepting the one half (1/2) of the oil royalty." *Id.* at ¶ 4. Deeds within the chain of title used different language, including: "subject also to such interest in the oil and gas royalties as have heretofore been reserved by former grantors" and "excepting also all oil and gas reserved by former grantors." *Id.* at ¶ 35. Among the fatal errors in the language in the root of title deed was the omission of a critical aspect of the original language indicating that it was a one-half interest and interchanging the word "exception" and "reservation" in subsequent deeds. *Id.* at ¶ 36. Because the language employed in the deeds that followed the severance deed attempting to reference the interest were all different and omitted a critical aspect of the original reservation, the reference was only general.

{¶48} In examining the instant case, it is critical to this analysis, but glossed over and not completely addressed in full by the trial court, that we review the complete language in the root of title deed. In full it states:

Case No. 25 MO 0006

Excepting and reserving unto the former Grantors, their heirs and assigns, one-half the royalty in the oil and gas underlying said premises.

Excepting and reserving the coal underlying said premises as reserved by prior Grantors.

This description copied from prior deed.

Except all easements, rights-of-way, restrictions and reservations of record.  Subject to all zoning regulations.

Excepting and reserving the (sic) Grantor, Russel L. Vaness, a life estate in the above described premises,

REFERENCE:  Volume 144, Page 86, Monroe County Deed Records.

(8/20/1979 Deed).

**{¶49}** First, this reference is almost a verbatim recitation of the original reservation.  The sole exceptions are the addition of the word "former" before "Grantors" and omission of the word "of" before "the royalty."  Beginning with the addition of the word "former" before grantors, this addition actually helps clarify that it refers to a prior reservation and does not reflect the creation of a new interest.  As to the omission of the word "of," Appellees conceded at oral argument that it is not a critical term and we agree.  Aside from these very minor deviations, the original reservation and the reference within the root of title deed both used the phrase "excepting and reserving" and specifically

referenced a one-half interest in royalties, thus the language is verbatim in its essential terms. As explained by Appellant, the interest at issue here is very basic and does not require many descriptive terms.

{¶50} It is clear under Ohio law that the name of the original reserving party need not necessarily be included in a reference in order for the reference to be specific. Pursuant to *Erickson,* slight omissions such as "of" are not outcome determinative. We note that none of the cases on which Appellees rely had a repetition with near verbatim language copying the original reference. Unlike the language in *O'Kelly, Kemp,* and *Crozier*, the instant reference uses the same language as the original reservation and, therefore, is specific. Hence, the trial court erred in determining that the reference is general in this case.

{¶51} Even if the reference were not specific, it would be deemed specific under the third prong of *Blackstone*, as a specific reference to the volume and page number is present in the later reference. While the trial court appeared to reason that this reference is not contained "within" the reservation, the volume and page reference acts almost like a citation at the end of the reservation section. There is no other logical reason for the reference other than to alert a researcher to multiple prior reservations that exist within the chain of title.

{¶52} In fact, the first two lines of the reservation reference are near verbatim recitations of reservations from the Boughnor severance deed (setting out the oil and gas interest and the coal interest). The very next line informs the reader "[t]his description is copied from prior deed[,]" making it clear the reference at the end of the reservation language is the citation for that reservation. Regardless, the reservation section also

Case No. 25 MO 0006

provides a notice regarding prior reservations, easements, rights-of-way, etc. and contains a new reservation, the life estate. The volume and page number citation are found in the very next line. It would be clear to any searcher that the citation to the volume and page number apply to one of these reservations. Even if it may not be entirely clear which reservation is referenced by this citation, a simple check of this citation would lead the searcher to the severance deed.

**{¶53}** It is apparent that the reference to the volume and page number applies to the line that explains that the "above references" were copied from a prior reservation. To hold otherwise would require a citation to the volume and page number after every reservation, which appears to be contrary to *Blackstone* and *Erickson,* both Ohio Supreme Court cases. Also, holding otherwise negates the fact that there is a reference to a prior deed, allowing anyone who searches to locate that document.

**{¶54}** Appellees rely on *RL Clark* to contend that a citation to a reservation must be in the same sentence as the reservation repetition within the deed. However, while the *RL Clark* Court gave an example from *Blackstone* where the citation was, coincidentally, contained within the same line as the reservation, the Court concludes more generally:

> In the instant case, the reference to the 1925 Ramsey Deed *is found only in a new paragraph* that refers to "the right to run cattle" and the right to remove "all presently growing crops" until April 1, 1957. If these were the rights that Appellants sought to preserve, then the reference to the 1925 Ramsey Deed would certainly factor in our analysis, and we would recognize that these rights expired on April 1, 1957. *Further, the prior*

*recorded title transaction on which Appellants rely is an equally general 1925 deed, not the 1902 deed containing the interest Appellants are trying to preserve.* The claimed prior interest under review here is "interest in the oil and gas royalties as have hereto been reserved by former grantors." (1956 Dunfee Deed.). *In the section of the deed where this language appears,* there is no identification of any prior recorded instrument. Based on the law of *Blackstone*, this is where the reference to the 1925 Ramsey Deed, or more correctly, the reference to the 1902 Wise Deed, was required to appear.

(Emphasis added.) *RL Clark* at ¶ 38.

**{¶55}** We note that the citations to the deed in *RL Clark* did not create the interests at issue. Even so, while *RL Clark* does not explain what it means by use of the term "section," the deed at issue in this case includes a section where all prior reservations are listed, and the citation contained in that section leads to the Boughner severance deed that created the disputed interest.

**{¶56}** Thus, the reference to the volume and page number in the present case appears to be within the same section as the reservations and applies to the interest at issue, a one-half interest in the oil and gas royalties. Notably the only deed between the severance deed and the root of title deed is the one referencing the divorce decree. Thus, a researcher would need only review two prior deeds after the root of title deed to find the original reservation.

**{¶57}** Again, based on the facts and the language of the deeds in this case, the reference is specific, as it clearly does not create a new reservation (language of "former

Grantor" and reference to being copied from a prior deed), it clearly describes the interest (one-half interest in the royalties pertaining to the oil and gas underneath the property), and a searcher would know to search the prior deeds for the reference, which would be easy, as the searcher would only have to go back two deeds to find the original reservation.

{¶58} Because of the language here that clearly articulates a prior reservation exists within the chain of title within close proximity to a citation for the volume and page number for the reservation, this reference is specific. Hence, as the parties mutually agreed in their cross motions for summary judgment, there is no outstanding material fact and the issue is resolved solely as a matter of law. Accordingly, Appellant's assignment of error has merit and is sustained.

*DMA*

{¶59} Appellant contends that Appellees failed to conduct a reasonable search using due diligence to find potential heirs before resorting to notification by publication. Specifically, Appellant cites the severance deed, which provided an address for Charles and Marie Boughnor in Canton. Appellant urges that Appellees conceded in an interrogatory that no search was conducted in Stark County, where Canton is located, to find any potential heirs to the Boughnor Interest. Appellees do not appear to respond to the DMA arguments in their brief.

{¶60} The first sentence of severance deed provides: "Clarence L. Boughnor and Marie E. Boughnor, husband and wife, 5212 Kassillon Road, North Canton, 20, Ohio."

{¶61} At oral argument, counsel for Appellees conceded that they did not conduct a reasonable search under Ohio law. Since the MTA issue may be resolved in favor of

Case No. 25 MO 0006

Appellant as a matter of law and as Appellees concede they are not entitled to judgment under the DMA as a matter of law, declaratory judgment and quiet title in Appellant is appropriate in this case.

*ROYALTIES*

**{¶62}** Appellant raises several theories seeking to recover royalties within her final argument. However, as the trial court improperly granted summary judgment to Appellees, this issue was never litigated in the trial court. It is readily apparent from the parties' briefs there are several outstanding matters of material fact unresolved on this issue.

**{¶63}** Because the trial court must grant judgment in favor of Appellant as to the MTA and DMA issues, and there are facts in dispute as to the amount of royalties owed and which party is responsible to pay them, the matter is also remanded to the trial court to determine how much and from whom the royalties are owed to Appellant.

Conclusion

**{¶64}** Appellant's MTA argument has merit as the root of title deed and every deed in the chain of title contains a specific reference to the Boughnor Interest in the form of a near verbatim recitation of that interest along with a citation to the volume and page number of the severance deed. Appellees have conceded judgment in favor of Appellant as to the DMA issue. Thus, the matter is remanded with instructions to grant summary judgment in favor of Appellant as to the MTA and DMA issues and for purposes of determining how much and who must pay Appellant's royalty payments at issue.

Robb, J. concurs.

Dickey, J. concurs.

Case No. 25 MO 0006

———————————————

For the reasons stated in the Opinion rendered herein, Appellant's assignment of error is sustained and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Monroe County, Ohio, is reversed. This matter is remanded to the trial court for further proceedings according to law and consistent with this Court's Opinion. Costs to be taxed against the Appellees.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

### <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**